**James R. SULLIVAN, Plaintiff–Appellant,**

v.

**James P. CONWAY and International Brotherhood of Electrical Workers, Defendants–Appellees.**

Nos. 97–1978, 97–3504.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1998.

Decided Sept. 30, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 16, 1998.

James Bryan Sullivan (argued), Downers Grove, IL, James R. Sullivan, Oak Brook, IL, for Plaintiff–Appellant in No. 97-1978.

James R. Sullivan (argued), Oak Brook, IL, for Plaintiff–Appellant in No. 97-3504.

Solomon I. Hirsh (argued), Chicago, IL, Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for Defendants–Appellees.

Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.

POSNER, Chief Judge.

This case began in an Illinois state court as a suit for defamation and other torts brought by attorney James Sullivan against James Conway, an official of the electrical workers' union, and against the union itself. The alleged defamation was that Conway had said that Sullivan was "a very poor lawyer." The suit was removed to federal district court after the complaint was amended to add claims under federal labor law; and a preliminary question is whether the removal was untimely.

■ In a case in which the original complaint does not disclose a ground for removal, the defendant must remove the case to federal court within thirty days of receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The defendants removed the case within thirty days after the state court judge granted the plaintiff's motion to amend the complaint to add federal claims but more than thirty days after the plaintiff made the motion. That is too late, according to the plaintiff. We are confident that he is wrong, although we cannot find any appellate case law directly on point. Until the state judge granted the motion to amend, there was no basis for removal. Until then, the complaint did not state a federal claim. It might never state a claim, since the state judge might deny the motion. The statutory language that we quoted speaks of a motion or other paper that discloses that the case is or has become removable, not that it may sometime in the future become removable if something happens, in this case the granting of a motion by the state judge. When the motion was granted, the case first became removable, and it was promptly removed. It would be fantastic to suppose that the time for removing a case could run *before* the case became removable; but that is Sullivan's contention, and it brings him (for he is representing himself in this litigation) perilously close to

establishing the truth of the alleged defamation.

After the case was removed to the federal court, the district judge granted summary judgment for the defendants on all counts, the state-law counts as well as the federal-law counts, and dismissed the suit. In a separate order he awarded the defendants $4,500 in attorneys' fees as a sanction for Sullivan's persistence in litigating a frivolous case, along with the usual court costs.

We must consider whether the suit, though properly removed to federal court, was properly retained there to decide issues purely of state law. The amended complaint alleges violations of federal labor law arising from the union's having violated its constitution by firing Sullivan and having retaliated against him (also by the firing) for efforts to ferret out corruption in the union. The violation of the union's constitution was actionable under the Taft–Hartley Act and the retaliation actionable under the Landrum–Griffin Act. But as soon as he landed in federal court, Sullivan thought better of proceeding under federal law and insisted that his federal-law claims were actually state-law claims. They were not, regardless of how he chose to characterize them; the federal labor laws completely occupy the field which they traverse. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Wooddell v. International Brotherhood of Electrical Workers*, 502 U.S. 93, 100–02, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *LaBuhn v. Bulkmatic Transport Co.*, 865 F.2d 119, 120–21 (7th Cir.1988). And anyway federal jurisdiction is not defeated by dropping federal claims after the case has been properly removed to federal court, *United Farm Bureau Mutual Ins. Co. v. Metropolitan Human Relations Comm'n*, 24 F.3d 1008, 1014 (7th Cir.1994); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3721, p. 213 (1981), although if all the federal claims drop out before trial, even as a consequence of the plaintiff's own voluntary dismissal, the district judge normally will relinquish jurisdiction over the state-law claims. See 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 346, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Marzuki v. AT & T Technologies, Inc.*, 878 F.2d 203, 206 n. 3 (7th Cir.1989). Stubbornly insisting on the purely state-law character of his employment claims, Sullivan failed to make any effort to show a violation of federal law, and thus he forfeited his employment claims, which the district judge therefore properly dismissed.

Although the federal claims had thus fallen out before trial, the district judge went on to decide Sullivan's state-law claims on the merits rather than relinquishing jurisdiction over them to the Illinois state courts. No one complains of his doing so, however, and discretionary components of the supplemental jurisdiction conferred by 28 U.S.C. § 1367 may be forfeited, just like any other nonjurisdictional grounds in civil litigation. *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 366–67 (7th Cir.1998); *Myers v. County of Lake*, 30 F.3d 847, 849–50 (7th Cir.1994). It is true that in matters touching on the relations between federal and state government, waivers can be declined in the interest of comity. E.g., *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Schlesinger v. Councilman*, 420 U.S. 738, 743, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Eaglin v. Welborn*, 57 F.3d 496, 499 (7th Cir.1995) (en banc); *Pittman v. Chicago Board of Education*, 64 F.3d 1098, 1101 (7th Cir.1995); *National Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 628–29 (1st Cir.1995); *Stone v. City & County of San Francisco*, 968 F.2d 850, 855–56 (9th Cir.1992). But there is no occasion to do that here. The district judge's resolution of the state-law issues is clearly correct and so does not step on the toes of the state courts. No purpose would be served by vacating his decision and thus prolonging this doomed litigation by sending it back to the state court to be dismissed there. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993).

Sullivan challenges Judge Holderman's refusal to disqualify himself from the case. After the case was removed and Judge Holderman assigned to it, the lawyer representing defendant Conway wrote his client that "as a result of the removal, we have a much better judge." By mistake, a copy of the letter was sent to a potential witness who

happened to be a friend of Sullivan's and who showed him the letter. Sullivan submitted the letter to the district court in support of his motion to remand the case to the state court—and then filed an affidavit of bias under 28 U.S.C. § 144 asking Judge Holderman to recuse himself lest the lawyer's praise of him as a "much better judge" cause the judge in gratitude to favor Conway in his rulings.

The affidavit was insufficient to demonstrate bias, and therefore the judge was not required either to relinquish the case or to refer the matter of recusal to another judge. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir.1993). We can imagine, though only with great difficulty, a case in which public praise of a judge by a lawyer was so fulsome as to call into question the judge's psychological fortitude to rule against his encomiast. But here there was no public praise; depending on the reputation of the state court judge, there was, perhaps, no praise at all; and the praise would not have come to Judge Holderman's attention, and so would never have threatened to turn his head, had not the lawyer wishing to disqualify him brought it to his attention. If, as we have absolutely no reason to believe (cf. *McLaughlin v. Venore Transportation Co.*, 244 F.Supp. 802 (D.Mass.1965)), the letter from Conway's lawyer influenced the judge, Sullivan has only himself to blame, and so the principle of waiver bars him from complaining. Indeed, it is improper for a lawyer or litigant (Sullivan being both in this case) to *create* the ground on which he seeks the recusal of the judge assigned to his case. That is arrant judge-shopping.

We come at last to the merits, and must sketch in a few facts. On April 5, 1990, the Chicago local of the electrical workers' union hired Sullivan as a business agent to assist in determining the eligibility for membership in the local of some 1,000 electricians who for years had been working under temporary permits issued by the local. Apparently the local had been permitting these "permit men" to work for below-union wages. The local had other problems: a number of its officers were suspected of financial improprieties, and some were under investigation by a federal grand jury. On April 16, the president of the international union called a meeting at which Conway and the president of the local, Ed Pierce, were present. Pierce mentioned the hiring of Sullivan, whereupon Conway made the statement that is the core of the complaint.

Three days later, the international placed the Chicago local in trusteeship. Conway was appointed trustee, and promptly fired Sullivan and three other business agents. The announcement of this action was sent to all members of the local; it stated no reason for the action. Sullivan had been on the local's payroll for all of 11 days. During the period of the trusteeship, which ended in April of the following year, Conway sent several open letters to the local's membership. These letters explained the reasons for the trusteeship. They did not mention Sullivan.

■ The defendants make one very poor argument: that we must assume that Conway did not say "Jim Sullivan is a very poor lawyer," but rather "I hear that Jim Sullivan is not a good lawyer." The basis for the first version was an affidavit by Pierce. The affidavit had been drafted by Sullivan, but it was signed by Pierce and so was his sworn statement. Later he was deposed and it was then that he gave the other version. The defendants argue that when there is an inconsistency between an affidavit and a deposition, the latter prevails. There is no such rule. The rule of which this is a garbled version is that a deponent is not allowed to change what he said in his deposition by giving an affidavit later, unless he has a good reason for doing so (for example, that newly discovered evidence reveals that the statement in the deposition was erroneous). E.g., *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 n. 4 (7th Cir.1998); *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168–72 (7th Cir.1996); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997); *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1010 n. 2 (10th Cir.1992); *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir.1991); *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). Affidavits are normally as here written by lawyers, and if such documents were allowed to be used to "correct" unguarded

statements that had been made in the more spontaneous setting of oral questioning, the value of pretrial discovery as a tool for eliciting truth and heading off trials based on fabrications would be seriously impaired.

But the sequence is crucial. Recollecting in tranquility the admissions blurted out under the pressure of a hostile interrogation, the witness and his lawyer can easily cobble together a plausible denial. But having given his sworn affidavit, the witness who later thinks better of what he said is not entitled to have his oral retraction believed merely because it too is under oath. *Pyramid Securities Ltd. v. IB Resolution Inc., supra,* 924 F.2d at 1124; see also *Tippens v. Celotex Corp., supra,* 805 F.2d at 954. And so we held in *Bank of Illinois v. Allied Signal Safety Restraint, supra,* that a witness may not wipe out his sworn testimony by contradicting it in a subsequent deposition. *Darnell v. Target Stores,* 16 F.3d 174 (7th Cir. 1994), on which the defendants rely, is not to the contrary. The plaintiff submitted supporting affidavits afterwards repudiated by the affiants in their depositions; the repudiations so far undermined the affidavits as to deprive them of any credibility, destroying the evidentiary basis of the plaintiff's case.

■ All this is of no importance here, since neither version of Conway's alleged defamation of Sullivan is actionable. It is one thing to say that a lawyer is dishonest, or has falsified his credentials, or has lost every case he has tried, or can never file suit within the statute of limitations. These are all readily verifiable statements of fact. But to say that he is a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury. *Barakat v. Matz,* 271 Ill.App.3d 662, 208 Ill.Dec. 111, 648 N.E.2d 1033, 1041 (1995); *Kumaran v. Brotman,* 247 Ill.App.3d 216, 186 Ill.Dec. 952, 617 N.E.2d 191, 200 (1993); *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993) (Illinois law). It is true that prefacing a defamatory statement with the qualification, "In my opinion," does not shield a defendant from liability for defamation. The test is whether a reasonable listener would take him to be basing his "opinion" on knowledge of facts of the sort that can be evaluated in a defamation suit. *Milkovich v. Lorain*

*Journal Co.,* 497 U.S. 1, 18–23, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Bryson v. News America Publications, Inc.,* 174 Ill.2d 77, 220 Ill.Dec. 195, 672 N.E.2d 1207, 1219–20 (1996); *Milsap v. Journal/Sentinel, Inc.,* 100 F.3d 1265 (7th Cir.1996) (per curiam); *Pope v. Chronicle Publishing Co.,* 95 F.3d 607, 614 (7th Cir.1996) (Illinois law); *Haynes v. Alfred A. Knopf, Inc., supra,* 8 F.3d at 1227 (same); *Stevens v. Tillman,* 855 F.2d 394, 400–02 (7th Cir.1988) (same); *Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 127–28 (1st Cir.1997); *Restatement (Second) of Torts* § 566, illustration 3 (1979). Here the answer is "no." Legal representation is attended by a great deal of uncertainty. Excellent lawyers may lose most of their cases because they are hired only in the most difficult ones, while poor lawyers may win cases because they turn away all the ones that would challenge their meager abilities. Many lawyers are good at some things and poor at others (Sullivan is plainly no expert on federal procedure), so that the evaluation of them will depend on what the evaluator is interested in. It would be unmanageable to ask a court, in order to determine the validity of the defendants' defense of truth, to determine whether "in fact" Sullivan is a poor lawyer.

■ We are mindful that Illinois like other states makes it per se defamatory to disparage a person's professional competence. E.g., *Bryson v. News America Publications, Inc., supra,* 220 Ill.Dec. 195, 672 N.E.2d at 1214–15. But while the per se category has consequences for the trial of a suit for defamation, see *id.* at 1214–16; *Mittelman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973, 979 (1989), they do not include a broader scope of liability for expressions of subjective opinion (or, as will become relevant shortly, a narrower defense of privilege). *Barakat v. Matz, supra,* 208 Ill.Dec. 111, 648 N.E.2d at 1038, 1041. If Conway had said that Sullivan had been or should be disbarred, this would be actionable (if false) because it would imply that Conway knew things about Sullivan that could be shown to be either true or false, since the grounds for disbarment are factual and not mere matters of subjective opinion or surmise. That was not the character of his statement.

 Even if we are wrong in thinking that merely calling a person a poor lawyer is never actionable under Illinois defamation principles, Sullivan still must lose, because the alleged defamation occurred in circumstances that made it privileged. Imagine that the board of directors of a corporation must decide whom to hire as a lawyer to handle an important case. The directors discuss a number of candidates, including a Mr. Guppy (cf. *Bleak House*). One of the directors says, "Guppy is a very poor lawyer." The director does not repeat the statement outside the meeting. Nevertheless, on Sullivan's interpretation of Illinois defamation law, the director has slandered Guppy, and Guppy can sue him. But if such suits are allowed, the free and frank exchange of ideas, facts, and opinions bearing on professional competence will be inhibited. Hence the rule that where there is a duty to speak, a defamatory utterance, if made in good faith and not disseminated any further than necessary, is privileged. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129, 135–36 (1993); *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032, 1035 (7th Cir.1996) (Illinois law); *Restatement, supra,* § 595. Local 134 was in deep trouble. The officials of the international, including Conway, had a duty to discuss the trouble and explore methods of dealing with it. Pierce, the local's president, told Conway that Sullivan was part of the solution. Conway disagreed. He was entitled to express his honest opinion to the president of the international, and the other union officials in attendance, without courting liability for defamation.

Remember that among those present was the person who had hired Sullivan. There was a risk that this person would repeat any hostile comment to Sullivan, as he did. It would be a disservice to the administration of unions and other organizations if the responsible officers of these organizations were inhibited by fear of defamation suits from making, within the confines of nonpublic meetings devoted to the affairs of the organization, candid criticisms of persons who might be friends of a person attending the meeting. *Gasbarro v. Lever Bros. Co.*, 490 F.2d 424 (7th Cir.1973) (Illinois law); *Manbeck v. Ostrowski*, 384 F.2d 970 (D.C.Cir.

1967); see also *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1162 (7th Cir.1998) (Illinois law); *Muthuswamy v. Burke*, 269 Ill.App.3d 728, 207 Ill.Dec. 50, 646 N.E.2d 616, 620 (1993). And there is no indication that in calling Sullivan a very poor lawyer Conway was saying something he did not believe to be true (or was indifferent to whether it was true or false), or was otherwise acting in bad faith, which would defeat the privilege. *Kuwik v. Starmark Star Marketing & Administration, Inc., supra,* 188 Ill.Dec. 765, 619 N.E.2d at 136; *Dawson v. New York Life Ins. Co., supra,* 135 F.3d at 1162.

 The statement "Jim Sullivan is a very poor lawyer" was not publicized. What was publicized, however, in the four announcements to the local's membership, was that he had been fired along with three other business agents and that the local had been placed in trusteeship because of a variety of problems, including corruption. Sullivan argues that readers of the announcements would have inferred that he was fired because he was somehow mixed up in the corrupt activities that had led to the trusteeship. Even if this is true, the announcements were protected by the same privilege that protects Conway's statement at the meeting of union leaders. The announcements were to the members of the local union, who had a vital interest in receiving candid communications from the trustee concerning his administration of the local. The announcements were therefore privileged. *Korbar v. Hite*, 43 Ill. App.3d 636, 2 Ill.Dec. 158, 357 N.E.2d 135 (1976).

 Sullivan claims that the announcements not only defamed him but also cast him in a "false light," a separate tort (a branch of the tort of invasion of privacy) but one very closely related to defamation. Associating a person with activities repugnant to him, such as union corruption in which Sullivan was not implicated, is a common way of casting someone in a false light. See, e.g., *Berkos v. National Broadcasting Co.*, 161 Ill.App.3d 476, 113 Ill.Dec. 683, 515 N.E.2d 668, 670–71, 680 (1987); *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1135 (7th Cir.1985) (Illinois law). But the same privi-

leges are applicable to the false-light tort as to the defamation tort. *Restatement, supra,* § 652G; cf. *Zdeb v. Baxter Int'l, Inc.,* 297 Ill.App.3d 622, 231 Ill.Dec. 871, 697 N.E.2d 425, 430 (1998). Otherwise privilege could be defeated by relabeling. Conway as trustee of the local had a duty to keep the membership informed about significant developments affecting them. One was the discharge of the four business agents. Another was the trusteeship itself. How could he have communicated both things without casting Sullivan in what Sullivan contends is a false light? By saying that, "And, by the way, Mr. Sullivan was *not* fired because of suspected improprieties"? That would have been worse. It would have engendered suspicion that the denial of a linkage was insincere—probably done on the advice of lawyers. Conway said no more, to no more people, than he had to in order to do his work as the trustee of a union. He acted with more restraint than the defendants in other defamation and false-light cases in Illinois in which privilege has been successfully asserted. See *Davis v. John Crane, Inc.,* 261 Ill.App.3d 419, 199 Ill.Dec. 133, 633 N.E.2d 929, 931, 937–38 (1994); *Beauvoir v. Rush–Presbyterian–St. Luke's Medical Center,* 137 Ill.App.3d 294, 92 Ill.Dec. 110, 484 N.E.2d 841, 844 (1985); *Dawson v. New York Life Ins. Co., supra,* 135 F.3d at 1161–62.

■ Quite apart from Illinois law, Conway had a federal privilege to express his opinion of Sullivan in his communications on matters of union business to union officers and members. Federal labor law preempts state defamation law when applied in ways that interfere with the internal management of unions. *Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

■ The only other issue that merits discussion, and this very briefly, is the award of attorney's fees. The defendants asked for more than $185,000, and the judge awarded $4,500. As the suit was not completely frivolous, the award of the full amount sought, comprising the defendants' entire legal costs, would have been excessive. But the attempt to get the suit remanded on the ground that it had been removed too late, the attempt to get Judge Holderman to recuse himself, and the insistence that the breach of the union's constitution could be litigated under state law were frivolous and surely put the defendants to a legal expense in excess of $4,500. The judge did the plaintiff a considerable favor in awarding such a small fee. The award of costs was also unexceptionable.

AFFIRMED.