*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0461p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BETH FREEMAN, Individually, and on behalf
of all others similarly situated,
                                                    *Plaintiff-Appellee,*

                                                                    No. 08-6321

                    *v.*

BLUE RIDGE PAPER PRODUCTS, INC.,
                                                    *Defendant-Appellant.*

Appeal from the United States District Court

for the Eastern District of Tennessee at Greeneville.

No. 08-00035—J. Ronnie Greer, District Judge.

Argued: December 9, 2008

Decided and Filed: December 29, 2008

Before: DAUGHTREY, ROGERS, Circuit Judges, and RESTANI, Judge.[*]

_____

## COUNSEL

**ARGUED:** Linda J. Hamilton Mowles, LEWIS, KING, KRIEG & WALDROP, P.C., Knoxville, Tennessee, for Appellant. Gordon Ball, BALL & SCOTT LAW OFFICES, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Linda J. Hamilton Mowles, LEWIS, KING, KRIEG & WALDROP, P.C., Knoxville, Tennessee, for Appellant. Gordon Ball, BALL & SCOTT LAW OFFICES, Knoxville, Tennessee, for Appellee.

ROGERS, J., delivered the opinion of the court, in which RESTANI, J., joined. DAUGHTREY, J. (pp. 9-11), delivered a separate dissenting opinion.

_____

[*] The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

1

—————————

**OPINION**

—————————

ROGERS, Circuit Judge.  This class action for nuisance in the form of water pollution from a paper mill involves an effort by plaintiffs to avoid removal to federal court under the Class Action Fairness Act (CAFA) of 2005.  Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  Plaintiffs divided their suit into five separate suits covering distinct six-month time periods, with plaintiffs' limiting the total damages for each suit to less than CAFA's $5 million threshold.  *See* 28 U.S.C. § 1332(d)(2).  The suits were filed in state court with identical parties and claims, except that the suits were for a series of different, sequential six-month periods.  Each suit limited the total class damages to less than $4.9 million. The cases were removed to federal court by the defendant paper mill, but remanded by the district court.  Because no colorable basis for dividing the claims has been identified by the plaintiffs other than to avoid the clear purpose of CAFA, remand was not proper.

Plaintiffs are three-hundred landowners who own property in Tennessee downriver from Blue Ridge's paper mill in Canton, North Carolina.  A previous Tennessee court class action involving the same class of plaintiffs and covering a six-year time period (June 1, 1999 to August 17, 2005) resulted in an aggregate award of $2 million.  *See Freeman v. Blue Ridge Paper Prods., Inc.*, 229 S.W.3d 694, 701 (Tenn. Ct. App. 2007).  Subsequent to that trial, on October 11, 2005 plaintiffs initiated in Tennessee state court the first of the five suits involved in this appeal.  Plaintiffs sought damages accruing from August 17, 2005 until the date of trial in that case.  The parties met the minimal diversity of citizenship requirements as required by the CAFA amendments to 28 U.S.C. § 1332.  *See* § 1332(d)(2).  In the complaint, the plaintiff disavowed recovery in excess of $4.9 million:

> The amount in controversy as to the Plaintiff and each member of the Proposed Class does not exceed Seventy-four Thousand Dollars ($74,000.00) each, exclusive of interest and costs.  The Plaintiff, therefore, disclaims any compensatory damages, punitive damages,

> declaratory, injunctive, or equitable relief greater than seventy-four thousand dollars ($74,000.00) per individual Class member, and Plaintiff and the Proposed Class limit their individual compensatory damage claims to Seventy-four Thousand Dollars ($74,000.00) per Class member, and limit their total class wide claims to less than Four Million Nine Hundred Thousand Dollars ([$]4,900,000.00).

*Freeman v. Blue Ridge Paper Products, Inc.*, No. 2:06-CV-05, at 2 (E.D. Tenn. Sept. 19, 2006).  Blue Ridge removed this first suit to the United States District Court for the Eastern District of Tennessee on January 12, 2006. *Id.* at 1.  The district court found that Blue Ridge had not established that it was "more likely than not the plaintiff's claims meet the amount in controversy requirement." *Id.* at 6.  The district court remanded the case to state court. *Id.* at 7.

On remand, the plaintiffs took steps to divide the suit into five separate suits, each covering a successive six-month time period.  On September 13, 2007, plaintiffs sought to amend the complaint in the remanded case so as to seek damages only for the period August 17, 2005 to February 17, 2006. *Freeman v. Blue Ridge Paper Products, Inc.*, No. 2:08-CV-35, at 2 n.2 (E.D. Tenn. Aug. 19, 2008).  The district court orally granted the motion on December 11, 2007, but did not enter the operative written order until February 1, 2008. *Id.*  On February 4, 2008, Blue Ridge again removed this case to federal court, alleging that the amendment made the case removable under 28 U.S.C. § 1446(b). *Id.*

After the amendment was granted, on December 19, 2007 plaintiffs filed in Tennessee Circuit Court the four additional suits at issue in this appeal.  Each suit covered a six-month time period: February 18, 2006–August 18, 2006 (No. 31,005), August 19, 2006–February 19, 2007 (No. 31,004), February 20, 2007–August 20, 2007 (No. 31,003), and August 21, 2007–February 21, 2008 (No. 31,002).  Each complaint, in terms nearly identical to the quoted language above, capped damages at $74,000 for each plaintiff and $4.9 million overall. *Id.* at 2.  On February 4, 2008, Blue Ridge also removed these four suits to federal court. *Id.* at 1.

The district court consolidated all five cases and then remanded each to the Tennessee court. *Id.* at 1, 7, 9.  With respect to the first suit, the court reasoned that the

case was untimely removed under § 1446(b). *Id.* at 6-7. According to the court, Blue Ridge should have removed the case within thirty days of September 13, 2007, when plaintiffs filed their motion to amend their complaint. *Id.* With respect to the other four cases, the court again stated that Blue Ridge had failed to show that it was "more likely than not the plaintiff's claims meet the amount in controversy requirement" for each individual suit. *Id.* at 8.

On October 30, 2008, a panel of this court granted Blue Ridge's petition to appeal the remand order pursuant to 28 U.S.C. § 1453(c)(1).

The $5 million CAFA threshold appears to be met in this case because the $4.9 million sought in each of the five suits must be aggregated. The complaints are identical in all respects except for the artificially broken up time periods. Plaintiffs put forth no colorable reason for breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction. In fact, plaintiffs' counsel admitted at oral argument that avoiding CAFA was the only reason for this structuring. If such pure structuring permits class plaintiffs to avoid CAFA, then Congress's obvious purpose in passing the statute—to allow defendants to defend large interstate class actions in federal court—can be avoided almost at will, as long as state law permits suits to be broken up on some basis.

CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction. The statutory language notes that "[c]lass action lawsuits are an important and valuable part of the legal system" because they allow aggregation of claims so that a defendant faces only a single action. CAFA § 2(a)(1), 28 U.S.C. § 1711 note. Furthermore, CAFA states that "there have been abuses of the class action device," including that "[s]tate and local courts are . . . keeping cases of national importance out of Federal court." *Id.* § 2(a)(4)(A). According to the relevant Senate Report, CAFA was necessary because the previous law "enable[d] lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests." S. Rep. No. 109-14, at 4 (2005). CAFA provides defendants with access to the federal courts,

> mak[ing] it harder for plaintiffs' counsel to "game the system" by trying to defeat diversity jurisdiction, creat[ing] efficiencies in the judicial system by allowing overlapping and "copycat" cases to be consolidated in a single federal court, [and] plac[ing] the determination of more interstate class action lawsuits in the proper forum—the federal courts.

*Id.* at 5. These purposes support reading CAFA not to permit the splintering of lawsuits solely to avoid federal jurisdiction in the fashion done in this case.

Our analysis is supported by a recent district court case from the same district. In *Proffitt v. Abbott Labs*, No. 2:08-CV-148, 2008 U.S. Dist. LEXIS 72467 (E.D. Tenn. Sept. 23, 2008), the plaintiffs brought eleven class actions, each for a one-year period, alleging that defendants were involved in an antitrust conspiracy. *Id.* at \*5-\*6. Each complaint pointed to defendant's actions taken throughout the whole eleven-year period as evidence of the conspiracy. *Id.* The court found that "[o]ther than the difficulty of making a damages disclaimer to avoid the CAFA, there appears no reason for selecting the one-year divisions and creating eleven lawsuits to litigate one conspiracy that involves one defendant and one drug." *Id.* at \*6. Finding that such an attempt to evade federal jurisdiction was at odds "with the Congressional intent and purpose of the CAFA," the district court treated the cases as one lawsuit and found that the amount in controversy was therefore met. *Id.* at \*7-\*12.

While plaintiffs seek to distinguish that case on the ground that a conspiracy claim could not be broken up in the same way that a nuisance claim can be, it is not clear that the cases are very different. Conspiracies can be broken up into time periods just like nuisances. Damages can be divided up accordingly. We recognize that state law appears to provide that every day starts a new statute of limitations for nuisance, and that a previous suit for nuisance does not preclude a nuisance suit for a period after the time of the previous suit. *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 553 S.E.2d 431 (N.C. Ct. App. 2001), for instance held that future damages in nuisance suits must be recovered in successive actions, and stated that "[t]he continued migration of contaminants remains a nuisance and when each contaminant crosses onto an adjoining

property, there is a new trespass and injury." *Id.* at 462 (citation omitted).[1] But these principles of state law do not mean that pre-suit periods of time may be artificially divided up for no reason other than to affect jurisdiction. And if indeed North Carolina law permits such a retroactive dividing up, there is nothing in federal law to prevent state law from similarly permitting the dividing up of a conspiracy claim.

Because plaintiffs' suits in the aggregate seek up to $24.5 million, we need not decide the proper standard of proof under CAFA when a plaintiff limits his damages to less than the jurisdictional amount and there is a factual dispute as to the amount of damages for purposes of removal. Instead, this case must be treated as if plaintiffs filed a claim worth up to $24.5 million in state court. In "a suit instituted in a state court and thence removed," plaintiffs' claim of damages exceeding the federal amount in controversy is presumed correct unless shown to a legal certainty that the amount is actually less than the federal standard. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290-92 (1938); *Gafford v. General Electric Co.*, 997 F.2d 150, 157 (6th Cir. 1993). "Thus, once the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the 'typical' circumstances in which the *St. Paul Mercury* 'legal certainty' test is applicable . . . ." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Therefore, on remand, if the district court determines to a legal certainty that plaintiffs' claim, as aggregated, does not meet the $5 million amount in controversy requirement, the cases should be remanded.

Our holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA. We recognize that plaintiffs can avoid removal under CAFA by limiting the damages they seek to amounts less than the CAFA thresholds. Generally, if a plaintiff "does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury*, 303 U.S. at 294. But

---

[1]North Carolina substantive law applies to this cause of action. *See Freeman*, 229 S.W.3d at 703 n.4 ("Tennessee is a proper forum for this case, but North Carolina substantive law must be applied.").

where recovery is expanded, rather than limited, by virtue of splintering of lawsuits for no colorable reason, the total of such identical splintered lawsuits may be aggregated.

We do not rely, however, on Blue Ridge's argument that the jurisdictional amount is exceeded in each one of the separate cases by virtue of the number of class members (300) and the amount that each class member claimed ($74,000). The argument is not persuasive because each of the five complaints caps individual damages at $74,000 and overall damages at $4.9 million. Presumably that overall limit for each time period is binding on the plaintiffs, regardless of how much each class member may genuinely think he or she should be compensated. In oral argument, counsel for plaintiffs explicitly so conceded.

Blue Ridge's removal of the first of the five claims before us was, moreover, timely. The removal of that case was untimely only if the thirty-day statutory time limit started before the complaint was actually amended. 28 U.S.C. § 1446(b). The motion to amend, and the oral order by the court that the complaint be amended, both occurred more than 30 days before removal. While some district court cases would hold the removal untimely in these circumstances, *e.g.*, *Williams v. Heritage Operating, L.P.*, No. 8:07-cv-977-T-24-MSS, 2007 WL 2729652, at *2 (M.D. Fla. Sept. 18, 2007) (stating that the removal clock begins to run on filing of motion); *Webster v. Sunnyside Corp.*, 836 F. Supp. 629, 630 (S.D. Iowa 1993), the better view in a case like this one is that the time limit begins to run from the actual and effective amendment of the complaint, *e.g. May v. J.D. Candler Roofing Co.*, No. 04-CV-74690, 2005 WL 1349110, at *4 (E.D. Mich. May 12, 2005) ("[M]ost courts have . . . held that § 1446(b)'s thirty-day limitations' period 'commences upon either the granting of the motion to amend or the actual filing of the amended complaint.'" (citing *Douklias v. Teachers' Ins. & Annuity Assoc.*, 35 F. Supp. 2d 612, 615 (W.D. Tenn. 1999))). This reading is supported by the fact that removal automatically places the case into federal court. § 1446(d). Therefore, removal before the state court actually amends the complaint may have the anomalous effect that the removed case lacks federal jurisdiction at the time that it is removed. As the Seventh Circuit reasoned in *Sullivan v. Conway*, 157 F.3d 1092 (7th Cir. 1998),

"[u]ntil the state judge granted the motion to amend, there was no basis for removal." *Id.* at 1094.

The complaint was amended only upon issuance of the written order. The oral order to amend the complaint was not effective under Tennessee law until entered as a written order: "[t]he action of a court is not complete nor effective for any purpose until a record thereof has been spread upon the minutes of the court, and the minutes duly signed or authenticated." *Mass. Mut. Life Ins. Co. v. Taylor Implement & Vehicle Co.*, 195 S.W. 762, 765 (Tenn. 1917); *see also Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979) ("[N]o oral pronouncement is of any effect unless and until made a part of a written judgment duly entered."). Thus the oral order in this case did not start § 1446(b)'s 30-day time period. Cases cited by plaintiffs for using the date of an oral order as the start time, are particularly unpersuasive, given that oral orders may be effective in other states. *See, e.g.*, *McMahon v. Advance Stores Co.*, No. 5:07CV123, 2008 WL 183715, at *5-*6 (N.D. W. Va. Jan 18, 2008) (finding that under West Virginia Supreme Court precedent, the court record which gives notice of removal need not be a written judicial order). Tennessee procedure mandates the clock begin only upon the entry of a written order and because Blue Ridge removed within thirty days of that entry, removal was timely under § 1446(b).

The remand order is reversed and the case remanded for the district court to consider whether the aggregated cases satisfy the amount in controversy requirement under § 1332(d). The attorney fee order is also reversed.

————————————

**DISSENT**

————————————

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting.  There is no gainsaying the point emphasized by the majority that CAFA was intended to prevent local courts from "keeping [class action] cases of national importance out of Federal court."  Class Action Fairness Act (CAFA) of 2005 § 2(a)(1), 28 U.S.C. § 1711 note. The aspect of this case that the majority overlooks, however, is the fact that this class action is not a "case of national importance" but is, instead, a matter of local concern. The named plaintiff, Beth Freeman, represents a class composed entirely of property owners in Cocke County, Tennessee.  The property in question abuts the Pigeon River along its 25.5-mile course in Tennessee, from the point where it crosses into the state near Waterville, North Carolina, to the point where it flows into the French Broad River just northwest of Newport, Tennessee, the county seat of Cocke County.  Indeed, the Tennessee portion of the river is located entirely within Cocke County.  Only the fact that the defendant, Blue Ridge Paper Products, operates a paper mill that is located in nearby Canton, North Carolina, and is incorporated in Delaware gives this case an interstate connection sufficient to subject it to possible diversity jurisdiction in federal court.

The Blue Ridge paper mill, formerly operated by Champion International Paper Corporation and now a subsidiary of Evergreen Packaging Group, is located upstream from the Cocke County stretch of the Pigeon River.  Blue Ridge uses the water from the river in its paper-making process, then discharges it back into the river on a continuous basis and thereby introduces certain chemicals and other contaminants into the water. Equally as continuous over the past two decades have been the legal efforts to force the defendant to abate the pollution, as reflected in repeated litigation against Champion and now Blue Ridge.  In the current complaint, Freeman alleges that the defendant's pollution of the Pigeon River has had various deleterious effects upon those individuals who own real property that adjoins the river as it flows into Tennessee, including

limitations on the enjoyment of their property, impaired water quality, personal discomfort, loss of recreational use of the river, annoyance, and loss of rental value of their property.

Because, at least theoretically, a new cause of action arises each time pollutants are discharged into the river, I conclude that the multiple actions filed in state court with firm limits on the amount of damages in controversy should not have been subject to removal under CAFA and, as a result, that the district court's order remanding them to state court should be affirmed. Moreover, given the multiplicity of events giving rise to potential liability, the majority's comparison between this case and that of conspiracy simply does not hold up as a valid analogy. A conspiracy has a beginning point, arising from an agreement between or among the co-conspirators, it is established by the occasion of one or more overt acts, and it continues until all but the last member of the conspiracy have withdrawn or otherwise have brought the conspiracy to a close. It may, of course, be possible to establish the existence of multiple, discrete conspiracies, but in the absence of such proof, there is no basis for segmenting the conspiracy into separate actions of some kind, as the majority seems to suggest.

The majority is willing to recognize that "[i]n determining the amount in controversy, the plaintiff is the 'master of his complaint.'" Smith v. Nationwide Prop. and Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007). If there were a single complaint in this case, alleging the existence of a single, one-time nuisance, the majority would apparently condone an action structured so that it avoided CAFA ("We do not rely, however, on plaintiffs' argument that the jurisdictional amount is exceeded in each one of the separate cases by virtue of the number of class members (300) and the amount that each class member claimed ($74,000) . . . because each of the five complaints caps individual damages at $74,000 and overall damages at $4.9 million. Presumably that overall limit for each time period is binding on the plaintiffs . . . ."), and would allow the plaintiffs intentionally to avoid removal to federal court. If the plaintiff files separate actions alleging multiple instances of conduct giving rise to liability, what reason would there be to charge, as the majority does here, that there is no "colorable basis" for

structuring those actions so as to avoid CAFA?  I would argue that there is none, and no authority to support the majority's adoption of a "colorable basis" requirement, especially where, as here, the filing of multiple actions is legal under state law.

For this reason, I respectfully dissent.