# United States Court of Appeals
## For the First Circuit

No. 09-1393

IN RE: HANNAFORD BROS. CO. CUSTOMER
DATA SECURITY BREACH LITIGATION,

THOMAS T. GRIMSDALE, III,

Plaintiff, Appellee,

v.

KASH N' KARRY FOOD STORES, INC.
d/b/a SWEETBAY SUPERMARKET AND SWEETBAY LIQUORS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Farris[*] and Boudin, Circuit Judges.

Clifford H. Ruprecht with whom William J. Kayatta, Gavin G. McCarthy, and Pierce Atwood LLP were on brief for appellant.
David J. Metcalf with whom Christopher T. McRae, McRae & Metcalf, P.A., Richard L. Coffman, and The Coffman Law Firm were on brief for appellee.

May 1, 2009

---

[*]     Of the Ninth Circuit, sitting by designation.

**LYNCH**, **Chief Judge**. This appeal presents an issue of first impression for this circuit regarding the application of the home state exception to federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4. Congress enacted CAFA in response to perceived abuses by plaintiffs' counsel in keeping class action cases of national importance out of the federal courts. See CAFA § 2(a)(4), 119 Stat. at 5; see also Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 47-48 (1st Cir. 2009); Johnson v. Advance Am., 549 F.3d 932, 935 (4th Cir. 2008). Defendant's essential argument is that the plaintiff has drawn his complaint in terms limiting the class and the defendants in order to defeat federal jurisdiction in violation of congressional intent. Plaintiff retorts that this suit fits precisely into an exception to the exercise of federal jurisdiction set forth explicitly in CAFA.

Here, a class defined to consist entirely of Florida citizens sued a single corporation, also a Florida citizen, in Florida state court. After defendant removed to federal court under CAFA, plaintiff sought remand to the state court under CAFA's home state exception, which requires a federal court to decline to exercise jurisdiction if at least two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state where the action was originally filed. See 28 U.S.C. § 1332(d)(4)(B).

The district court found that this case fit squarely within CAFA's home state exception and granted the plaintiff's motion to remand. See In re Hannaford Bros. Co. Customer Sec. Breach Litig., 592 F. Supp. 2d 146 (D. Me. 2008). We agree and reject, on the facts here, the defendant's argument that the application of CAFA's home state exception depends on a broader assessment of the claims brought by others who do not fall within the complaint's class definition or of the claims available to the class against other possible defendants.

I.

Defendant Kash N' Karry Food Stores, Inc. operates a chain of grocery stores in Florida. A computer hacker stole the credit card information of customers who had shopped at Kash N' Karry's stores between December 2007 and March 2008. Plaintiff Thomas Grimsdale, III regularly shopped at Kash N' Karry's stores in Tampa, Florida during this period and paid for his purchases using his bank debit card.

On April 4, 2008, Grimsdale sued Kash N' Karry in Florida state court, alleging that Kash N' Karry had failed to adopt adequate security measures to protect its customers' credit card information. He sought to represent a class of approximately 1.6 million persons who had "used credit/debit cards at [Kash N' Karry's] stores between December 7, 2007 and March 10, 2008 and/or had their personal and sensitive Confidential Information stolen

-3-

and/or compromised as a result of the [security] Breach." The class definition explicitly excluded "any persons and entities who are not citizens of the State of Florida."

Kash N' Karry removed the case to federal court in Florida under CAFA on April 17, 2008. On April 25, 2008, Grimsdale filed a motion to remand the case to state court, arguing that CAFA's home state exception applied.

On October 8, 2008, the Judicial Panel on Multidistrict Litigation transferred the case to the District of Maine, where twenty-four other suits had been consolidated against entities related to Kash N' Karry, raising similar allegations of wrongdoing in the security breach. These related entities were Kash N' Karry's sister corporation, Hannaford Brothers Co., and their common corporate parent, Delhaize America, Inc. Combined, the multidistrict litigation involved an estimated 4.2 million class members. On December 10, 2008, the district court granted Grimsdale's motion to remand, finding the requirements of CAFA's home state exception satisfied. See In re Hannaford Bros., 592 F. Supp. 2d at 148.

Kash N' Karry timely petitioned for leave to appeal the district court's remand order under 28 U.S.C. § 1453(c). We granted Kash N' Karry's petition on March 26, 2009. After expedited briefing, we heard oral argument in this appeal on April 9, 2009.

-4-

II.

Congress expanded diversity jurisdiction through CAFA to allow for federal court jurisdiction over class actions satisfying the statute's amount in controversy and minimal diversity requirements.  See 28 U.S.C. § 1332(d)(2); see also Amoche, 556 F.3d at 47-48.  Yet that grant of jurisdiction is subject to several exceptions.  Here, our focus[1] is on the home state exception, which provides:

> A district court shall decline to exercise jurisdiction [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B).[2]

---

[1]    Although we are required to consider first any questions of Article III jurisdiction, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998), it is clear there is such jurisdiction over this case.  We may bypass questions of statutory jurisdiction where, as here, there are prudential reasons to do so. See Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 60 (1st Cir. 2003) ("[A] jurisdictional inquiry is not required here given that the question invokes statutory jurisdiction."); see also Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 53-54 (1st Cir. 1999).  Here, the district court's analysis focused on whether the home state exception to jurisdiction applied, see In re Hannaford Bros., 592 F. Supp. 2d at 148, and so have the parties' arguments to us.  We therefore bypass the preliminary question of whether the requisite minimal diversity exists here for jurisdiction under 28 U.S.C. § 1332(d)(2) and consider only whether CAFA's home state exception applies.

[2]    To remain in federal court, this case must both satisfy the minimal diversity requirement for federal jurisdiction under 28 U.S.C. § 1332(d)(2) and also not fall under CAFA's home state exception in § 1332(d)(4)(B).  Kash N' Karry therefore argues that its dual citizenship as a Delaware corporation with its principal

-5-

There is a threshold question of which party bears the burden of showing that CAFA's home state exception applies. We hold that the burden is on the plaintiff to show that an exception to jurisdiction under CAFA applies. This is the rule adopted by our sister circuits. See Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680-81 (7th Cir. 2006); Frazier v. Pioneers Ams. LLC, 455 F.3d 542, 546 (5th Cir. 2006); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1165 (11th Cir. 2006). And it is consistent with the Supreme Court's general approach to removal jurisdiction. See Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 698 (2003) ("[W]henever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception."). Here, however, as the parties agree, the burden of proof is largely immaterial because the outcome turns purely on questions of law.

---

place of business in Florida creates the requisite minimal diversity for jurisdiction under § 1332(d)(2). See 28 U.S.C. § 1332(d)(2)(A) (granting federal jurisdiction over class actions in which the amount in controversy exceeds $5 million and "any member of a class of plaintiffs is a citizen of a State different from any defendant"). We are skeptical of this argument and note that one other circuit has rejected it. See Johnson, 549 F.3d at 936. In any event, Kash N' Karry concedes that we need not decide whether minimal diversity exists under § 1332(d)(2) if the home state exception applies. And Kash N' Karry admits that the home state exception is worded differently from § 1332(d)(2) such that it applies regardless of whether the defendant's dual citizenship creates minimal diversity for purposes of § 1332(d)(2).

At first blush, the requirements of CAFA's home state exception appear to be satisfied here. As Grimsdale has defined the class in his complaint, all class members are Florida citizens. Kash N' Karry, the only defendant in this case, is also a Florida citizen because its principal place of business is in Florida. See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen . . . of the State where it has its principal place of business . . . ."). And this case was originally filed in Florida state court.

Still, Kash N' Karry offers a different reading of CAFA's home state exception, turning on the interpretation of the sub-phrase "the members of all proposed plaintiff classes in the aggregate" within the home state exception. See id. § 1332(d)(4)(B) ("A district court shall decline to exercise jurisdiction [where] . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."). Specifically, Kash N' Karry argues that the plain meaning of "all proposed plaintiff classes in the aggregate" requires reference outside the four corners of the complaint in the particular case before the court to all previously filed class actions which arise from a core nucleus of operative facts such as

to meet an "Article III case or controversy" requirement.[3]  It contends that the term "aggregate" means that Congress intended to refer beyond the plaintiff's complaint; otherwise, Congress would have simply used the term "class members" as it did in § 1332(d)(1)(D).[4]  Applying this principle here, Kash N' Karry says the previously filed national class actions involving Hannaford that were consolidated by the Judicial Panel on Multidistrict Litigation are the appropriate reference point to measure "the members of all proposed plaintiff classes in the aggregate."

We reject Kash N' Karry's reading as contrary to the plain language of § 1332(d)(4)(B).  The most natural reading of the home state exception is that Congress meant § 1332(d)(4)(B) to be read in conjunction with the federal class action rule, Fed. R. Civ. P. 23, or similar state statutes and rules of judicial procedure.[5]  That is made explicit by the definition of "class

---

[3]    Kash N' Karry also argues, as a fallback position, that its reading of the statute is supported by CAFA's legislative history, specifically a post-enactment Senate report.  Kash N' Karry did not make this argument to the district court, and because we hold that the plain text of the statute refutes Kash N' Karry's position, we do not consider CAFA's legislative history.

[4]    Likewise, Kash N' Karry argues that CAFA's reference to "primary defendants" requires a court to look beyond the plaintiff's complaint to consider unnamed defendants against whom the class could pursue a claim arising from the same core set of facts.  This claim is analytically similar to Kash N' Karry's argument as to class membership, and we reject it for the same reasons.

[5]    Here, the Florida state rule is similar in all relevant aspects to Rule 23.  See Fla. R. Civ. P. 1.220.

-8-

action" in § 1332(d)(1)(B), which refers to Rule 23 or similar state rules.  Under Rule 23, "a class may be divided into subclasses that are each treated as a class under this rule."  Fed. R. Civ. P. 23(c)(5).  The home state exception's use of the plural "classes," therefore, does not indicate that Congress intended an inquiry into what Kash N' Karry has termed the broader "Article III case or controversy" because a single complaint may contain multiple classes.[6]

In rejecting Kash N' Karry's reading of § 1332(d)(4)(B), we do not mean to say that the four corners of the plaintiff's complaint necessarily control the question of whether CAFA's home state exception applies.  We do not rely on the maxim that the plaintiff is the master of his own complaint -- the answer to that question is that it depends.  Indeed, as we recently recognized in Amoche, 556 F.3d at 48-51, courts need not accept the plaintiffs' allegations regarding the amount in controversy when it appears to a reasonable probability that more than the jurisdictional minimum is at issue.  We can imagine situations -- for example, if the plaintiff has omitted an indispensable defendant -- where looking

---

[6]    Moreover, Kash N' Karry's reading would present serious administrability problems, which Congress surely did not intend. It would be extremely difficult to define the scope of what Kash N' Karry calls the "Article III case or controversy."  And Kash N' Karry's own definition is arbitrary: nothing in its theory supports its limitation to already-filed national actions.  Indeed, Kash N' Karry uses the phrase "Article III case or controversy" in ways very different from the usual understanding of the phrase.

beyond the four corners of the plaintiff's complaint may be necessary to determine whether the home state exception applies. But that situation is not before us here, and we leave further consideration of it for another day.

Kash N' Karry argues that our reading, which here gives effect to the plaintiff's choice to define the scope of the suit narrowly, will ultimately cause the home state exception to defeat CAFA's broader purpose of expanding federal jurisdiction. That is, Kash N' Karry says that if courts are not allowed to consider the existing class members and defendants in national class actions but are limited to those described in the complaint in a single state, plaintiffs will tailor their pleading to avoid federal jurisdiction under CAFA.

It is common for removing defendants trying to remain in federal court under CAFA to make this generic argument -- that the four corners of the complaint do not control -- as to various provisions of CAFA. For example, in Freeman v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th Cir. 2008), five separate state court class actions were filed by plaintiffs from the same state for the same injuries covering sequential time periods. Each suit sought damages of $4.9 million, just below CAFA's $5 million jurisdictional minimum. Id. at 406. The Sixth Circuit held that this type of structuring is impermissible where "there is no colorable basis" for dividing the suit "other than to frustrate

-10-

CAFA." Id. at 409. Whether or not we would agree with Freeman, this case is very different. Grimsdale has not artificially split his class of Florida plaintiffs into multiple suits to avoid federal jurisdiction.

And in Tanoh v. Dow Chemical Co., ___ F.3d ___, 2009 WL 826404 (9th Cir. Mar. 27, 2009), the court interpreted the "mass action" provisions of CAFA, 28 U.S.C. § 1332(d)(11)(B)(i), as not permitting aggregation of seven separate state court toxic-tort suits against the same manufacturer, each with fewer than 100 plaintiffs, to create a basis for removal under CAFA.

There is no one-size-fits-all response to a claim of evasion of congressional intent. The analysis will turn on the precise language of that section of CAFA. Our job is to effectuate the intent expressed in the plain language Congress has chosen, not to effectuate purported policy choices regardless of language. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 5 (2000) ("[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)) (internal quotation marks omitted)).

In any event, we are dubious about the policy arguments. Several factors make it unlikely that the exception will swallow the rule entirely. In particular, CAFA's home state exception is

fairly narrow, encompassing only those suits where at least two-thirds of the class members and all of the primary defendants are citizens of the same state. Suits involving a primary defendant who is not a citizen of the forum state cannot qualify for the exception. Moreover, plaintiffs potentially sacrifice a great deal in terms of the parties they can sue and the claims they can bring by narrowing their pleadings to fit within the home state exception. And to the extent that the home state exception in practice creates an undesirable loophole, Congress may choose to amend the statute to address those problems as they arise.

Beyond that, many of the policy concerns that motivated Congress to enact CAFA are simply not implicated where the suit qualifies for the home state exception. As we recently recognized:

> In enacting CAFA, Congress was responding to what it perceived as abusive practices by plaintiffs and their attorneys in litigating major interstate class actions in state courts, which had "harmed class members with legitimate claims and defendants that ha[d] acted responsibly," "adversely affected interstate commerce," and "undermined public respect for our judicial system."

Amoche, 556 F.3d at 47 (alteration in original) (quoting CAFA § 2(a), 119 Stat. at 4). According to Congress, these abusive practices included forum shopping to take advantage of potential state court biases against foreign defendants. See CAFA § 2(a)(4)(B), 119 Stat. at 5. But where, as here, the defendant is also a citizen of the forum state, the concern for bias simply does

-12-

not arise. Likewise, Congress in enacting CAFA was concerned that state courts were "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." Id. § 2(a)(4)(C), 119 Stat. at 5. But again, that potential problem is not implicated where the class members are largely citizens of the forum state.

Kash N' Karry has a final contention that Grimsdale has improperly defined the class in this case by requiring that all class members be Florida citizens. Defining the class in this way, Kash N' Karry says, makes the class impossible to ascertain because state citizenship depends upon a person's subjective intent.

The language of CAFA itself refutes the argument. It requires a court to assess the citizenship of the class members when applying the home state exception, an exercise Congress obviously did not consider to be impossible. Moreover, at least one other circuit has recognized that defining the class to include only citizens of a particular state can defeat federal jurisdiction under CAFA. See Dennison v. Carolina Payday Loans, Inc., 549 F.3d 941, 943 (4th Cir. 2008); Johnson, 549 F.3d at 937. Therefore, we reject Kash N' Karry's argument that Grimsdale has improperly limited his class allegations to include only Florida citizens.

### III.

The district court's remand order is affirmed. Costs are awarded to Grimsdale.

-13-