LYNCH, Chief Judge,
concurring in the judgment.
I join the judgment of the court affirming the bankruptcy court’s application of the means test.
The underlying problem concerns whether a bankruptcy petition filed under chapter 7 should be converted to a chapter 13 petition (with the debtor’s consent), or be dismissed, because it is abusive. See 11 U.S.C. § 707(b)(1). Chapter 7, which discharges the debtor’s debts, is more favorable to the debtor than chapter 13, which commits the debtor’s projected disposable income toward paying his creditors.
In the structure of the bankruptcy act, Congress provided two different mechanisms for determining whether a chapter 7 petition is abusive. The first test, which presumes abuse if the debtor’s monthly income as calculated under the statute exceeds a certain threshold — here, $167 per month — is the means test under 11 U.S.C. § 707(b)(2)(A)(i). The second test allows the court to consider whether the petition was filed in bad faith and whether the “totality of the circumstances ... of the debtor’s financial situation demonstrates abuse.” Id. § 707(b)(3). Here, the trustee argued that the chapter 7 petition was presumptively abusive under the means test; she did not seek a finding of abuse under the totality of the circumstances test.
The question before us is the meaning of the statutory phrase “scheduled as contractually due,” id. § 707(b)(2)(A)(iii)(I), as it applies to collateral which the debtor intends to surrender at the time he files his schedules and statement of intentions. Although the language of the statute tends to support the debtor’s position, I do not think the plain text resolves the issue one way or the other. The word “scheduled,” even standing alone, is ambiguous. If Congress had wanted to include all future payments regardless of the debtor’s intentions to make those payments, it could have used explicit language to that effect. Conversely, if only those debts the debtor intends to repay were meant to be counted, Congress could have used language to that effect, including by referencing the debtor’s statement of intentions in the statute.
The textual ambiguity is not resolved by the rule of construction that no statutory term should be read to be surplusage or unnecessary. The trustee’s surplusage argument does not compel adoption of her view. The term “scheduled as” is certainly not surplusage under the trustee’s reading because the term indicates where a court should look to determine whether a particular debt should be counted under the means test. Likewise, the term “scheduled as” is not necessarily surplusage under the debtor’s reading, which uses the term colloquially.
*53 Nor is the interpretive issue resolved, for several reasons, by the fact that the means test uses rough approximations of certain inputs into the calculation, such as the debtor’s current monthly income or expenses for food, housekeeping supplies, and transportation. This does not tell us whether a similar approximation should be made for the debtor’s future payments on certain secured debts. For example, a debtor’s future income may be hard to predict for various reasons, making an approximation based upon the debtor’s recent income history the most accurate and convenient indicator of the debtor’s future income from the information available to the bankruptcy court. But the. same accuracy and convenience factors that justify a rough approximation of income are not present for the debtor’s future payments to secured creditors, especially because the analysis could easily be refined by looking to the debtor’s statement of intentions to determine whether he plans to surrender the collateral securing a particular debt. Moreover, the fact that the means test allows the debtor to use standard deduction amounts for some expenses, such as expenses for food, housekeeping supplies, and transportation, see id. § 707(b)(2)(A)(ii)(I), does not mean that other inputs into the means test should disregard the debtor’s actual expenses. Indeed, other inputs into the means test, such as the debtor’s expenses in caring for a family member, include only the debtor’s actual expenses paid. See id. § 707(b)(2)(A)(ii)(II).
All that one can conclude with certainty is that Congress, after balancing the occasionally competing concerns of accuracy and convenience, intended some inputs into the means test to be generalized approximations and others to be derived more closely from the debtor’s actual financial situation. Because Congress’s treatment of the other inputs may well have been driven by policy considerations unique to those factors, one cannot draw a conclusion about how Congress intended to account for a debtor’s future payments to secured creditors from the ways in which Congress treated those other inputs.
The combination of the text, the structure of the statute, and considerations of administrative ease of enforcement, to my mind, provides more guidance. See Pierce v. Underwood, 487 U.S. 552, 558-60, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (reviewing the language, structure, and practical considerations to determine the meaning of the statutory phrase “substantially justified”); In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 79 n. 6 (1st Cir.2009) (rejecting an interpretation of a statute where, in addition to the direction of the plain text, the proposed reading would have created “serious administrability problems”); Storna-waye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 34-35 (1st Cir.2009) (using the “language, structure, and evident purpose” to understand the meaning of the bankruptcy act). The means test — if applied without regard to the debtor’s intentions— becomes more complementary to the totality of the circumstances test, which requires more of an inquiry into a number of facts. That is, Congress may have designed the means test as an efficient way to weed out those for whom a quick look at their filing reveals an ability to repay their creditors, making treatment of their petitions under chapter 13 more appropriate. At the same time, Congress may have intended the totality of the circumstances test to function as a backstop to catch those whose petitions are not presumptively abusive under the means test but for whom a closer look at their actual financial situation shows that they have the means to repay their creditors under chapter 13 *54 and that they have tried to avoid that repayment.
Moreover, this view of the means test has certain advantages. The means test as described by the debtor may be easier to administer than the alternative proposed by the trustee because it requires no consideration of the debtor’s intentions. Whatever the loss in accuracy which results under this view of the means test (usually favoring the debtor), that accuracy may be recaptured or approximated under the alternative totality of the circumstances test.
It is not clear that Congress focused on the problem of how to treat secured debts under the means test where the debtor intends to surrender the collateral. If Congress had focused on this precise problem, it may well have adopted a different solution. But until Congress gives us a clearer indication of its intentions, it best fits the structure of the statute to use the means test as a quick screening test to identify those who should not proceed under chapter 7, reserving the totality of the circumstances test for a more thorough consideration of the debtor’s financial situation. From the structure of the statute, the general tendency of the language to support the debtor’s position, and the ease of administration of the means test as described by the debtor, I conclude that Congress’s intention was that courts apply the means test without regard for the debtor’s intentions, even though many of the other interpretative guides are inconclusive. Nothing in the legislative history leads to a different conclusion.
I join the judgment of the court.