# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-8038

IN RE:

SPRINT NEXTEL CORPORATION,

*Petitioner.*

Petition for Permission to Appeal
from the United States District Court for the
Northern District of Illinois, Eastern Division.
*No.* 09 C 2192—**Matthew F. Kennelly,** *Judge.*

SUBMITTED OCTOBER 16, 2009—DECIDED JANUARY 28, 2010

Before FLAUM, EVANS, and SYKES, *Circuit Judges*.

EVANS, *Circuit Judge.* Sprint Nextel has petitioned for leave to appeal the district court's remand to state court of a class action against it. The complaint alleged violations of the Kansas Unfair Trade and Consumer Protection Act. The district court declined to exercise jurisdiction on the ground that the suit fell within the home-state exception to the Class Action Fairness Act (CAFA). *See* 28 U.S.C. § 1332(d)(4)(B).

The complaint, filed in Kansas state court, alleges that Sprint Nextel, a Kansas corporation, conspired with

other cell phone providers to impose artificially high prices for text-message service. The plaintiffs declared that they were bringing the suit on behalf of themselves and "all Kansas residents" who purchased text messaging from Sprint Nextel or one of its alleged coconspirators between January 2005 and October 2008, when the suit was initiated. But they also specified that their class was limited only to those who (1) had a Kansas cell phone number, (2) received their cell phone bill at a Kansas mailing address, and (3) paid a Kansas "USF fee," which is applied to all long-distance calls within Kansas. It's not clear what the third factor adds to the first two. Regardless, the plaintiffs asserted that these three factors showed that all the class members were Kansas citizens.

Sprint Nextel removed the case to the United States District Court for the District of Kansas pursuant to CAFA, 28 U.S.C. § 1332(d)(2), (d)(5), contending, as required, that over $5 million was in controversy, the class contained more than 100 members, and at least one member of the putative class, though meeting the three criteria outlined above, was not a Kansas citizen. Sprint Nextel in fact came up with five non-Kansan putative class members, all of them national corporations that subscribed to Kansas cell phone service as part of their Kansas presence and received bills at a Kansas office. The panel on Multi-District Litigation transferred this case, along with over a dozen other similar suits against cell phone companies, to the Northern District of Illinois. The district court agreed with the plaintiffs that the home-state exception required it to remand the case.

The requirements of the home-state exception are simple: if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed," the district court should decline jurisdiction. 28 U.S.C. § 1332(d)(4)(B). In resisting remand, Sprint Nextel argued first that the plaintiffs had presented no evidence that two-thirds of their proposed class members were in fact Kansas citizens, as opposed to, say, local offices of national corporations or out-of-state students at Kansas colleges, each of whom might have Kansas cell phones and Kansas mailing addresses. Second, Sprint Nextel argued that even if the plaintiffs had documented the Kansas citizenship of the members of the proposed class, CAFA required more. Sprint Nextel contended that when the statutory exception specifies that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate" must be from the home state, it means two-thirds of the members of the proposed classes in all lawsuits alleging similar conduct, not just the proposed class in this suit. And there was no way, Sprint Nextel continued, that Kansas citizens constituted at least two-thirds of the members across the proposed plaintiff classes in all text-messaging antitrust cases.

The district court rejected both arguments. First, it ruled that even though the plaintiffs presented no evidence to counter Sprint Nextel's attacks on the composition of their class, they "have defined the putative class in such a way as to leave little doubt that at least two-thirds of the class members are Kansas citi-

zens." The court rejected the second argument on the ground that while the local-controversy exception requires district courts to inquire whether there have been other class actions with similar allegations in the past three years, 28 U.S.C. § 1332(d)(4)(A)(ii), the home-state exception does not. The district court concluded from this distinction that the home-state exception does not, as a rule, require consideration of other law-suits; consequently, the defendant's reading of the two-thirds provision, which would require the court to look beyond the four corners of the complaint, was untenable. In its petition, Sprint Nextel renews its arguments, which present issues of first impression for this court. Sprint Nextel also contends, in light of the other related suits and the fact that it is a nationwide cell phone provider, that this is a national controversy, and just the sort of dispute that CAFA was designed to keep in federal court.

We first address whether the denominator of the two-thirds provision is the total number of potential class members in *this* suit or in all suits with similar allegations. Sprint Nextel makes much of the language, "proposed plaintiff classes in the aggregate," suggesting that the only possible reason for Congress's reference to plural "classes in the aggregate" is to require a district court to search out similar cases. We join the First Circuit, the only appellate court to confront this issue, in rejecting that reading. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78-79 (1st Cir. 2009). The First Circuit's response to this argument was that there can be more than one class in a single class action, and the plural language is meant to address that

scenario. *Id.* at 79. We agree. For example, in a toxic tort case there could be both a medical monitoring class and a property remediation class. Without the requirement that the district court evaluate the citizenship of "the proposed classes in the aggregate," one might think that so long as at least two-thirds of the members of *one* of those classes were from the home state, the exception would apply. Preventing that misconception seems purpose enough for CAFA's reference to "classes in the aggregate."

Moreover, identical language is used in the local-controversy exception, and in that context it can't mean what Sprint Nextel says it does. The local-controversy exception is more intricate than the home-state exception, but for our purposes only two elements are important. First, as with the home-state exception, "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate [must be] citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i). Second, the exception applies only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants . . . ." *Id.* at 1332(d)(4)(A)(ii). Under Sprint Nextel's reading, the first provision would require the district court to evaluate the fraction of home-state plaintiffs involved in all similar class actions. But, says the second provision, if there *are* similar actions, it's ipso facto not a local controversy. Thus, for purposes of the local-controversy exception, the composition of proposed plaintiff classes in other

similar suits can never matter. If there aren't any other similar suits, the district court would of course evaluate only those in the current case, and if there are similar suits, the fact of their existence controls, regardless of the composition of the proposed classes in those suits. It would be surprising if the same language meant something different in the home-state exception. *See Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).

We also reject Sprint Nextel's insinuation that federal jurisdiction is proper, regardless of the rules set forth in CAFA, because, it says, CAFA was enacted to ensure that national controversies, which it asserts this is, are decided in federal court. That may have been Congress's general goal, but it also provided for exceptions, and plaintiffs are free to "circumscribe their class definitions" so that they can fit within one of those exceptions and avoid federal jurisdiction. *Johnson v. Advance Am.*, 549 F.3d 932, 937 (4th Cir. 2008); *see also Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 n. 5 (4th Cir. 2008) (collecting cases to the effect that any general policy embodied in CAFA in favor of removal jurisdiction gives way to canons of strict statutory construction).

Furthermore, because the home-state exception, unlike the local-controversy exception, is framed entirely in terms of the parties' citizenship, the fact that this suit may be but a slice of a bigger controversy is irrelevant. The First Circuit case, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, provides a good illustration of this point. That appeal involved one

of 25 different suits that were filed in various district courts against a grocery chain based in Florida, another that operates in the Northeast, and their common Belgian parent company. *Id.* at 77. Despite the national, and even international, flavor of the controversy as a whole, the First Circuit looked only at the case before it and applied the citizenship requirements of the home-state exception. Because the primary defendant was a Florida corporation and at least two-thirds of the plaintiffs were citizens of Florida, the state in which the action was brought, the First Circuit affirmed the remand order. *Id.* at 80-81.

It's more difficult to say whether the district court's ruling on the evidentiary issue was correct. Once Sprint Nextel established that CAFA jurisdiction exists, the burden fell on the plaintiffs, who were seeking remand, to show that the home-state exception applies. *See Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 680 (7th Cir. 2006). And to do that, the plaintiffs had to establish by a preponderance of the evidence that two-thirds of their proposed class members are Kansas citizens, that is, either individuals domiciled in Kansas or corporations organized there (or other business entities meeting the relevant tests). 28 U.S.C. § 1332(a), (c); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813-14 (5th Cir. 2007). The plaintiffs didn't submit any evidence about citizenship, but the district court thought that the class definition itself, keyed as it is to Kansas cell phone numbers and mailing addresses, made it more likely than not that two-thirds of the putative class members are Kansas citizens.

This approach has some appeal. People with Kansas cell phones presumably have them because they lived or worked in the state at some time, and the current Kansas mailing addresses suggest that they still do. Granted, being a resident isn't the same thing as being a citizen, that is to say, a domiciliary, *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002), and people who work in Kansas but don't live there—such as commuters from Kansas City, Missouri—aren't Kansas citizens. Yet, one would think that the vast majority of individual Kansas cell phone users do in fact live in that state and that the vast majority of them view it as their true home. True, some of those residents are college students from other states or others, such as soldiers, who come to Kansas without the intent to remain indefinitely. But it's hard to believe that those nondomiciliaries are collectively more than a drop in the bucket when it comes to class composition. The population of Kansas is approximately 2.8 million people, http://quickfacts.census.gov/ qfd/states/20000.html, but the state's biggest military base, Fort Leavenworth, is home to only 10,000 soldiers and family members, http://usmilitary.about.com/od/ armybaseprofiles/ss/leavenworth_3.htm, and the out-of-state population of the University of Kansas, the state's biggest school, is under 10,000, http://colleges. collegetoolkit.com/colleges/studentprofile/university_of_ kansas/155317.aspx.

The same view seems equally applicable to cell phones belonging to businesses. On the one hand, any out-of-

state companies that purchase text messaging for Kansas cell phones used by their local employees and receive bills at a Kansas mailing address would be part of the class, but not Kansas citizens. On the other hand, we imagine that only a fraction of businesses that use Kansas cell phone service are not Kansas citizens. All in all, we're inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens. *Cf. Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752, at *6 (S.D. Ill. Nov. 22, 2006) (holding court "entitled to assume" that class members were Illinois citizens on basis of Illinois mailing addresses because, in its view, mailing addresses are evidence of residence, which is evidence of domicile); *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367-68 (E.D. La. 2007) ("Although there well may be proposed classes where detailed proof of the two-thirds citizenship requirement is required, the Court finds that common sense should prevail in this closed-end class involving people who, as noted, hold an asset that is a measure of domicile, their home."); *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, Nos. 07-3130, 07-3131, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (holding it was "reasonable to infer" that two-thirds of all class members were Louisiana citizens, where class was open to all "residents, domiciliaries, business entities, property owners, and other persons and entities residing or present" in a certain parish in August 2005); *see also Joseph v. Unitrin, Inc.*, No. 1:08-CV-077, 2008 WL 3822938, at *6 (E.D. Tex. Aug. 12, 2008).

But that's all guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork none-theless. There are any number of ways in which our assumptions about the citizenship of this vast class might differ from reality. For example, we may have grossly underestimated the presence of out-of-state businesses or the number of Kansas residents who don't intend to stay indefinitely. Or perhaps a far greater percentage of nondomiciliary residents use text messaging than their domiciled neighbors. Ultimately, we agree with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.

In *Gerstenecker v. Terminix Int'l, Inc.*, No. 07-CV-0164-MJR, 2007 WL 2746847 (S.D. Ill. Sept. 19, 2007), the district court refused to remand a case where the class was defined as all individuals and entities that own property in Illinois and purchased extermination contracts from the defendant. The court was troubled both by the fact that the class could include absentee landlords from other states and also by the lack of proof that any Illinois-resident owners were indeed Illinois citizens. "In essence, plaintiffs ask this Court to conclude that because the real property at issue is located in Illinois, two-thirds of the members of the proposed class in the ag-gregate are citizens of Illinois. That may or may not be true but either conclusion requires a leap of faith this Court cannot make." *Id.* at *2. The plaintiff in *Phillips v. Severn Trent Envtl. Serv., Inc.*, No. 07-3889, 2007 WL 2757131 (E.D. La. Sept. 19, 2007), sought remand under the local-

controversy exception for a putative class that was defined as all persons who were living in a particular Louisiana county during a one-week period in 2007 and used contaminated water. *Id.* at *1-*2. The district court acknowledged that "there is some intuitive appeal to the claim" that two-thirds of the people who lived in the county during that week were citizens of Louisiana at the time the complaint was filed only two months later, but held such intuition did not establish by a preponderance of the evidence that the citizenship requirement was satisfied. *Id.* at *3.

A similar struggle played out in *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506 (E.D. Pa. 2007), where the district court rejected the argument that two-thirds of the class members were bound to be Pennsylvania citizens, given a class defined as everyone who worked at a particular Pennsylvania factory over a 35-year period. The court said that even though satisfaction of the citizenship requirement "may be a reasonable inference, it does not satisfy the plaintiff's burden of proof," because some of the employees may have moved when they left their jobs, or may not have been citizens even when they were working at the factory. *Id.* at 517. And in *Schwartz v. Comcast Corp.*, No. Civ.A. 05-2340, 2006 WL 487915 (E.D. Pa. Feb. 28, 2006), the court ruled that the plaintiffs had not established the Pennsylvania citizenship of two-thirds of a class they defined as "[a]ll persons and entities residing or doing business in the Commonwealth of Pennsylvania who subscribed to Comcast's high-speed internet service" during a given one-year period. *Id.* at *3; *see also Evans v. Walter*

*Indus., Inc.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006) (rejecting assertion that two-thirds of plaintiff class were Alabama citizens, where class was defined as "[a]ll property owners, lessees, [and] licensees of properties" on which the defendants released toxins 85 years earlier, as well as "all individuals who have come into contact" with those toxins; court found no evidence that two-thirds of those harmed during lengthy period were still, or indeed ever, Alabama citizens).

This would have been a much simpler case if the plaintiffs had followed either of two approaches. For starters, rather than relying on the fact that per the class definition each class member has a Kansas cell phone number and billing address (and paid the Kansas USF fee, whatever that is), they might have submitted evidence that two-thirds of the class members were indeed Kansas domiciliaries or businesses. Given that there are probably hundreds of thousands of putative class members, if not more, it would be infeasible to document each class member's citizenship individually, but the district court could have relied on evidence going to the citizenship of a representative sample. This evidence might have included affidavits or survey responses in which putative class members reveal whether they intend to remain in Kansas indefinitely, *see Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 817 (5th Cir. 2007); *Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268, 273-74 (E.D. La. 2008), or, if they are businesses, their citizenship under the relevant test. Given those results and the size of the

sample and the estimated size of the proposed class, the district court could then have used statistical principles to reach a conclusion as to the likelihood that two-thirds or more of the proposed class members are citizens of Kansas. Statisticians and scientists usually want at least 95 percent certainty, *see* Michael O. Finkelstein & Bruce Levin, *Statistics for Lawyers* 120, (2d ed. 2001), but any number greater than 50 percent would have allowed the district court to conclude that the plaintiffs had established the citizenship requirement by a preponderance of the evidence. *See Ethyl Corp. v. EPA*, 541 F.2d 1, 28 n. 58 (D.C. Cir. 1976) (en banc).

Alternatively, the plaintiffs might have defined their class as all Kansas *citizens* who purchased text messaging from Sprint Nextel or an alleged coconspirator. By using that definition, the plaintiffs could have guaranteed that the suit would remain in state court. There would have been no concern that out-of-state businesses, college students, soldiers, and the like comprised greater than one-third of the class, and it doesn't take any evidence to establish that Kansas citizens make up at least two-thirds of the members of a class that is open only to Kansas citizens. *See Johnson v. Advance Am.*, 549 F.3d 932, 937-38 (4th Cir. 2008). The tradeoff is that this definition would have limited the pool of potential class members, something that plaintiffs and their lawyers are apparently unwilling to do.

Accordingly, we GRANT the petition for leave to appeal and VACATE the order remanding the case to state court. On remand, the district court should give the plaintiffs

another opportunity to prove that the proposed class satisfies the requirements of the home-state exception.