**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BILL G. NICHOLS, on behalf of himself
and all others similarly situated,

     Plaintiff - Appellant,

v.

CHESAPEAKE OPERATING, LLC;
CHESAPEAKE EXPLORATION, LLC,

     Defendants - Appellees.

No. 18-6006
(D.C. No. 5:16-CV-01073-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Bill Nichols appeals from a district court order denying his motion to abstain and

remand to state court in this putative class-action suit against Chesapeake Operating,

LLC and Chesapeake Exploration, LLC (collectively, "Chesapeake").  Exercising

jurisdiction under 28 U.S.C. § 1453(c)(1), we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

Nichols is a royalty owner in Oklahoma natural gas wells owned in part or operated by Chesapeake. In August 2016, he sued Chesapeake in Oklahoma state court for underpayment or non-payment of royalties. He sought class certification of certain "Oklahoma Residents," which he defined using a four-part test:

> Persons to whom, from January 1, 2015 to the date suit was filed herein, (a) Chesapeake mailed or sent each monthly royalty check on an Oklahoma well to an Oklahoma address (including direct deposit); (b) Chesapeake mailed or sent a 1099 for both 2014 and 2015 to an Oklahoma address; (c) the Settlement Administrator in Fitzgerald Farms, LLC v. Chesapeake Operating, Inc., Case No. CJ-10-38, Beaver County, Oklahoma mailed or sent a distribution check and 1099 to an Oklahoma address; and[ ] (d) except for charitable institutions, were not subject to the Oklahoma Withholding Tax for Nonresidents on royalties paid in 2014 to the date suit was filed.

Chesapeake removed the case to federal court based on the Class Action Fairness Act ("CAFA"), which grants district courts original jurisdiction over class actions involving at least 100 proposed class members, more than $5,000,000 in controversy, and the presence of any plaintiff class member who is a citizen of a State different from any defendant. See 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). In regard to citizenship, Chesapeake pointed out that its principal place of business is in Oklahoma, thereby making it an Oklahoma citizen, see § 1332(d)(10), and that there was a class member that met Nichols' resident definition—Austin College, a Texas citizen.

Nichols soon filed a motion arguing that CAFA's home-state exception required the district court to remand the case to state court. This exception requires a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff

2

classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." § 1332(d)(4)(B). Nichols proffered evidence to show that at least two-thirds of the proposed class members shared Chesapeake's Oklahoma citizenship, including the declaration of statistician Joseph Kadane, Ph.D., who randomly selected 100 royalty owners from "a spreadsheet containing 28,929 unique records of royalty owners paid from Oklahoma wells and who have an Oklahoma address." Of the 100 royalty owners comprising Kadane's sample, there were 13 trusts, 7 entities, and 80 individuals.

To obtain citizenship information about those royalty owners, Nichols employed a marketing research firm and a private investigator. The research firm successfully surveyed 54 of the sample's royalty owners. It asked individuals whether they considered themselves to be Oklahoma citizens and whether they planned to move from Oklahoma in the near future. And it asked businesses whether they were organized or headquartered in Oklahoma. The firm did not propose any questions about trustees or trust beneficiaries.

Based on the survey results, Nichols' counsel determined that 95% of the sample's royalty owners were Oklahoma citizens "because the data shows indicia of Oklahoma citizenship with no conflicting data of citizenship elsewhere." Based on that 95% determination, Kadane performed a statistical analysis and concluded that "it is more likely than not that more than 67% of the members of the [entire] proposed plaintiff class are Oklahoma citizens."

3

The district court was not persuaded, finding three significant flaws in the evidence. First the district court noted that neither the survey data nor the skip-trace investigation provided information as to the citizenship of trust beneficiaries or trustees—important components of a trust's citizenship.[1] Second, the district court found that a number of individuals identified as Oklahoma citizens were actually deceased, with no information provided as to heirs' citizenship. Finally, the district court found that Nichols' counsel had an "insufficient basis" for determining that some members of the random sample were Oklahoma citizens.[2] Accordingly, the district court denied Nichols' motion to abstain and remand, finding he had not shown the applicability of CAFA's home-state exception by a preponderance of the evidence. Nichols now appeals.

**II**

We review de novo the district court's interpretation of CAFA's home-state exception to jurisdiction. See Woods v. Standard Ins. Co., 771 F.3d 1257, 1262 (10th Cir. 2014). "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." Id. (quotation omitted). Thus, "once a defendant establishes [CAFA]

---

[1] See Conagra Foods, Inc. v. Americold Logistics, LLC, 776 F.3d 1175, 1181 (10th Cir. 2015) (explaining that "[w]hen a trustee is a party to litigation, it is the trustee's citizenship that controls for purposes of diversity jurisdiction" as long as the trustee is a real party in interest, and "[w]hen the trust itself is party to the litigation, the citizenship of the trust is derived from all the trust's 'members,'" which "includes the trust's beneficiaries"), aff'd sub nom. Americold Realty Trust v. Conagra Foods, Inc., 136 S. Ct. 1012 (2016).

[2] For instance, the skip-trace reports indicated that only 35 of the sample's class members had Oklahoma driver's licenses and that 37 members had non-Oklahoma addresses.

4

removal is proper, a party seeking remand to the state court bears the burden of showing jurisdiction in federal court is improper under one of CAFA's exclusionary provisions." Id. Because Nichols concedes the propriety of removal, he must show the applicability of a CAFA exception by a preponderance of the evidence. See Mondragon v. Capital One Auto Fin., 736 F.3d 880, 884 (9th Cir. 2013); Vodenichar v. Halcón Energy Props., Inc., 733 F.3d 497, 503 (3d Cir. 2013); In re Sprint Nextel Corp., 593 F.3d 669, 673 (7th Cir. 2010); see also Dutcher v. Matheson, 840 F.3d 1183, 1189, 1190 (10th Cir. 2016).[3] "The preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence." Nutraceutical Corp. v. Von Eschenbach, 459 F.3d 1033, 1040 (10th Cir. 2006) (footnote omitted).

Nichols contends that a rebuttable presumption of citizenship arises from his allegation that the proposed class members are Oklahoma residents. And because

---

[3] Nichols suggests that in order to meet his burden, he must make only "some minimal showing" that at least two thirds of the proposed class members are Oklahoma citizens. Reece v. AES Corp., 638 F. App'x 755, 769 (10th Cir. 2016) (unpublished). In Reece, a panel of this court observed, in the context of CAFA's local-controversy exception, 28 U.S.C. § 1332(d)(4)(A), that although "[s]everal of our sister circuits have required plaintiffs to establish the elements of a CAFA jurisdictional exception by a preponderance of the evidence[,] [s]ome district courts[ ] . . . have required less proof, embracing a reasonable-probability standard or something akin to it." 638 F. App'x at 768 (emphasis added; citations omitted). The Reece panel declined to embrace either approach, and instead selected a burden it found common to both, which, as Nichols posits, requires "some minimal showing of the citizenship of the proposed class at the time that suit was filed." Id. at 769 (quotations omitted). We conclude, however, that a more definitive standard is warranted, and we choose to follow our sibling circuits in their use of the more exacting preponderance-of-the-evidence standard. That standard is consistent with the "strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Dutcher, 840 F.3d at 1190 (quotation omitted).

5

Chesapeake did not offer evidence that more than one-third of the proposed class members are not Oklahoma residents, Nichols says, the district court was required to abstain. To support this contention, he cites the Sixth Circuit's majority opinion in Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383 (6th Cir. 2016), cert. denied, 137 S. Ct. 2242 (2017). The Mason majority reasoned that because "the law affords a rebuttable presumption that a person's residence is his domicile," id. at 390, and because state citizenship is based on domicile, citizenship could be presumed from residence—a transitive proposition (i.e., if A = B and B = C, then A = C). The majority stated that this proposition was compelling from a policy standpoint: "Affording the moving party a rebuttable presumption of citizenship based on residency avoids the exceptional difficulty of proving the citizenship of a class of over 100 individuals, given the nature and timing of the citizenship inquiry under the local controversy exception." Id. at 392-93.

The dissent pointed out that triggering a CAFA exception based on the mere allegation of residence conflicted with the federal courts' "strict duty to exercise the jurisdiction that is conferred upon them by Congress." Id. at 397 (Kethledge, J., dissenting) (quotation omitted). And given that abstention had long been considered "an extraordinary and narrow exception to that duty," id. (quotation omitted), the dissent concluded the better approach was to follow other circuits and require "at least some facts in evidence from which the district court may make findings regarding the class members' citizenship." Id. at 397-98 (quotation omitted). It cited, among other cases, the Tenth Circuit's unpublished decision in Reece v. AES Corp., in which a panel of this

6

court applied in the CAFA-exception context the longstanding view that "allegations of mere residence may not be equated with citizenship." 638 F. App'x at 769 (unpublished) (quotations omitted). Thus, the Reece panel said, such allegations must be accompanied by "some persuasive substantive evidence (extrinsic to the amended petition) to establish the [requisite] citizenship of the class members." Id.

The Eighth Circuit has similarly "read the historical citizenship/residency distinction into" the CAFA mandatory exception statute and rejected the assertion that "presumptions alone may transform a challenged allegation of residency into the establishment of citizenship." Hargett v. RevClaims, L.L.C., 854 F.3d 962, 966 & n.2 (8th Cir. 2017) (citing Mason, 842 F.3d at 397-99 (Kethledge, J., dissenting); Reece, 638 F. App'x at 769-70; and Mondragon, 736 F.3d at 884).

We agree with the dissent in Mason, this court's non-precedential decision in Reece, and the other circuits that reject the applicability of a rebuttable presumption of citizenship in the context of a CAFA exception invoked based on the mere allegation of residence. There is a "strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Dutcher, 840 F.3d at 1190 (quotation omitted). Further, "[a]n individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship." Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238 (10th Cir. 2015); see, e.g., Bingham v. Cabot, 3 U.S. (3 Dall.) 382, 383 (1798) ("A citizen of one state may reside for a term of years in another state, of which he is not a citizen; for, citizenship is clearly

7

not co-extensive with inhabitancy.").[4]  Congress no doubt "mean[t] to incorporate the established meaning of these terms," NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981), into the CAFA exceptions premised on "citizenship," 28 U.S.C. § 1332(d)(4). See Hargett, 854 F.3d at 966.  We therefore turn to the evidence Nichols submitted to show that two-thirds or more of the proposed plaintiff class members were Oklahoma citizens.

**III**

We review for clear error the district court's factual findings concerning the applicability of CAFA's home-state exception.  See Mondragon, 736 F.3d at 886; see also Middleton v. Stephenson, 749 F.3d 1197, 1201 (10th Cir. 2014) (indicating that domicile and citizenship findings are reviewed for clear error).  Under the clear-error standard, "we may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred."  Middleton, 749 F.3d at 1201.

Nichols maintains that he provided enough evidence of the putative class members' Oklahoma citizenship to require remand.  He presented business records provided by Chesapeake of its royalty owners along with their Oklahoma addresses; identified class members as being exempt from non-resident withholding tax; selected a representative sample of class members and obtained citizenship data on those members;

---

[4] Domicile requires both residence in a State and intent to remain there indefinitely.  Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014).

and employed a statistician to draw conclusions about the composition of the class based on a random sample. Further, he stresses that his evidence was unrebutted.

We acknowledge the significant effort Nichols employed to show that at least two-thirds of the class members shared Chesapeake's Oklahoma citizenship. But we note that the need for this evidence was of Nichols' own making: he chose to define the class in terms of residence rather than citizenship. See In re Sprint Nextel Corp., 593 F.3d at 676 (stating that CAFA's home-state exception would have been satisfied had the plaintiffs simply limited the class to Kansas citizens because "it doesn't take any evidence to establish that Kansas citizens make up at least two-thirds of the members of a class that is open only to Kansas citizens"). By defining the class in terms of residence, Nichols saddled himself with an evidentiary burden, one which he sought to meet through admittedly imperfect evidence.

In particular, Kadane reached his conclusion that two-thirds or more of the class members are Oklahoma citizens by extrapolating from a flawed sample. As the district court observed, trusts—which make up nearly 15% of the sample—were not properly accounted for. Further, the sample included deceased individuals without providing further identifying citizenship information. And finally, the district court alluded to information in the skip-trace reports inconsistent with Oklahoma citizenship for some of the sample's members. Nichols does not dispute these problems or otherwise explain how Kadane's evidentiary extrapolation remains statistically viable.

Given the clear-error standard of review, we must affirm the district court's conclusion that Nichols failed to prove at least two-thirds of the proposed plaintiff class

9

members were Oklahoma citizens by a preponderance of the evidence.  The district court, therefore, properly determined that CAFA's home-state exception to exercising jurisdiction did not apply.

**IV**

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge