HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE
Invoking the provisions of the Class Action Fairness Act ("CAFA"), Defendants removed this class action, in which Plaintiff seeks to represent a class pursuing damages for violations of the Georgia Security Deposit Statute. See Doc. No. [1]. Plaintiff filed a Motion to Remand claiming the home-state exception to CAFA applies (or, in the alternative, the Court should decline jurisdiction under CAFA), removal was untimely, and Defendants fail to establish the amount in controversy by a preponderance of the evidence. Doc. No. [8]. As explained below, the Court finds that it lacks jurisdiction to hear this case and, therefore, remands it back to state court.
I. BACKGROUND
Plaintiff Whelan filed this action in the State Court of DeKalb County on August 28, 2018. See Doc. No. [1-2]. He alleges violations of the Georgia Security Deposit Statute, particularly sections 44-7-30 through 44-7-37. Id. at 5. His complaint seeks to represent a class of individuals that have had their security deposits improperly withheld by Defendants. The complaint defines the proposed class as "Ryan Whelan and any citizen of Georgia" who "had all or some of their security deposit" not returned within one month of terminating their lease due to alleged damage to the premises and who did not receive a comprehensive, itemized list of the alleged damages from Defendants within three days of termination. Id. at 11. The proposed class excludes any claims for security deposits retained after June 30, 2018. Id.
Defendants were served on August 31, 2018. Doc. Nos. [8-2]; [8-3]; [8-4]. Plaintiff's complaint did not allege his citizenship; rather, it stated that he was a resident of Maryland. See Doc. No. [1-2], p. 6. On November 9, 2018, Defendants served Plaintiff with written discovery requests, in which they sought confirmation that Plaintiff was not a Georgia citizen. See, e.g., Doc. No. [1-5], pp. 2, 5. Plaintiff *1315 served Defendants his responses on December 12, 2018 and confirmed he was not a citizen of Georgia. Doc. No. [1-7], pp. 2, 6. Defendants filed their notice of removal thirty days later, on January 11, 2019. Doc. No. [1].
II. LEGAL STANDARD
"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Federal law allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Congress, through CAFA, has given "federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse,[1] and the amount in controversy exceeds $ 5 million." Dart Cherokee Basin Operating Co. v. Owens, --- U.S. ----, 135 S.Ct. 547, 552, 190 L.Ed.2d 495 (U.S. 2014) ; see also 28 U.S.C. § 1332(d)(2), (5)(B). However, CAFA also creates a "home-state exception" which requires district courts to "decline to exercise jurisdiction" over class actions in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). While other removal statutes are narrowly construed in favor of remand, "no antiremoval presumption attends cases invoking CAFA." Dart, 135 S.Ct. at 554 ; Dudley, 778 F.3d at 913.
"[T]he burden of establishing removal jurisdiction rests with the defendant[s] seeking removal." Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013). Jurisdictional facts, such as citizenship and the amount in controversy, are assessed at the time of removal. Id.; see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014). If the jurisdictional facts are challenged, the removing party must prove those facts through a preponderance of the evidence. Dudley, 778 F.3d at 913 . Although "the removing party bears the initial burden of establishing federal jurisdiction," the opposing party seeking "to avail itself of an express statutory exception ... bears the burden of proof with regard to that exception." Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006).
For removal to be appropriate, not only must jurisdiction be proper, but the removing party must also follow the procedural requirements for removal. See 28 U.S.C. § 1446 ; see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 756 (11th Cir. 2010) ("CAFA's removal provision expressly adopts the procedures of the general removal statute."). The removal statute requires defendants to remove within thirty days of receipt of the initial pleading (if removability is apparent on the face of the complaint), or within thirty days of receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(2)(A), (3).
III. DISCUSSION
Plaintiff objects to removal on three grounds: the home-state exception to CAFA, the timeliness of removal, and an impermissibly speculative amount in controversy.
*1316 In light of the parties' respective burdens of proof, the Court addresses first whether Defendants have met their burden to establish removal jurisdiction and the timeliness of removal. The Court then considers whether Plaintiff met his burden to show that a statutory exception to removal applies.
A. Amount in Controversy
It is Defendants' burden to establish, by a preponderance of the evidence, that removal jurisdiction exists. Dudley, 778 F.3d at 913. Defendant asserts that the provisions of CAFA are met because minimal diversity exists (Plaintiff is a citizen of Maryland and Defendants are citizens of Georgia), Plaintiff proposes a class with more than one hundred members, and the amount in controversy exceeds $ 5,000,000. Doc. No. [1], pp. 5-11.
To meet their evidentiary burden, Defendants provide Plaintiff's answers to Defendants' Requests for Admission and Interrogatories, which confirm minimal diversity and a class potentially exceeding 100 members. Doc. No. [1-7]. To establish the amount in controversy, Defendants rely on allegations in the complaint along with the declaration of Jaime Diego, a "Principal" of Defendant Avila Real Estate, who purports to have over thirty years of experience in the apartment rental business. Doc. No. [1-8]. Mr. Diego attests to two facts: (1) as of January 11, 2019, Defendant Wesley Apartment Homes managed twelve apartment complexes with approximately 4,700 units and an average security deposit of $ 500, and (2) in his experience, "the average turn-over rate in an apartment community is 65% per year." Id.
Defendants' Notice of Removal (which is not evidence) then attempts to spin these two "facts," along with allegations in the complaint, into a $ 5,000,000 amount in controversy. See Doc. No. [1], pp. 7-11. Defendants assume a twenty-year statute of limitations, with 4,700 units, at a 65% turnover rate, to arrive at 61,000 departing tenants. Id. at ¶ 22. Defendants then suppose that 10% of those 61,000 tenants had their security deposits withheld, and they use Plaintiff's alleged withheld amount of $ 300 (tripled to account for statutory damages) to arrive at a "conceivable" figure of $ 5,499,000.[2] Id. at ¶ 23. Finally, Defendants tack on another $ 1,374,750 in attorneys' fees (25% of $ 5,499,000), because the Georgia Security Deposit Statute allows for the recovery of reasonable attorney fees. Id. at ¶¶ 24, 25; see also O.C.G.A. § 44-7-35.
Plaintiff challenges the sufficiency of Defendants' evidence and contends that Defendants' calculations are conjectural and purely speculative. Doc. No. [8-1], pp. 21-27. In response to Plaintiff's arguments, Defendants do not submit additional evidence. Rather, they rely on their initial submissions and reiterate the conceivable nature of their original math. See Doc. No. [10], pp. 12-20.
"[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka, 608 F.3d at 754. The Court can make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the evidence presented. Id. However, the evidence must be specific enough to support those reasonable extrapolations and show that the amount in controversy "more likely than *1317 not" exceeds the requirement. Id. at 752, 754 (quoting Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other grounds by Cohen v. Office Depot, 204 F.3d 1069 (11th Cir. 2000) ); see also Dudley, 778 F.3d at 913.
The Court finds Defendants' estimation of the amount in controversy to be impermissibly speculative and, therefore, that Defendants have not shown by a preponderance of the evidence that the amount-in-controversy requirement is met. Defendants have shown a "conceivable" scenario. The problem is that their evidence does not establish that their scenario is more likely than not the case. While the Court can make reasonable inferences and deductions from the evidence presented, Defendants do not present enough evidence for the Court to find that Defendants' math, more likely than not, represents a fair estimate of the amount in controversy. Too many unsupported assumptions are required to reach Defendants' desired result.
First, Defendants' calculation relies on Mr. Diego's assertion that "as of January 11, 2019" Defendants managed 4,700 units. Defendants do not give any indication whether this number was relatively consistent over the twenty-year period that their calculations cover. Therefore, for it to be more likely than not that Defendants' estimate is accurate, the Court must assume that Defendants manage the same number of units today as they did in 1998. Although Defendants do not have to prove their numbers with certainty, the Court must be relatively confident that this number accurately represents the potential number of units over a twenty-year period in order to base its conclusions regarding the amount in controversy on it. Should that number have varied substantially over the twenty-year period described in Plaintiff's complaint that would have a drastic impact on Defendants' number of 61,100 departing tenants.
Additionally, Defendants rely on Mr. Diego's assertion that the "average" turnover rate for "an" apartment community is 65%. Defendants do not allege their actual turnover rate (presumably a number within their possession), but rely on an average that is not geographically specific, nor is it linked to complexes with similar characteristics (i.e., price-point, amenities, etc.) to Defendants' complexes. Therefore, for it to be more likely than not that Defendants' estimate is accurate, the Court must assume that Defendants' turnover rate is the same as the average. Perhaps Defendants are particularly excellent apartment managers and retain an unusually high number of their tenants, or perhaps Defendants operate in an extremely tight housing market and therefore have an unusually low turnover rate. If Defendants' actual turnover rate varies from the average turnover rate, it significantly impacts Defendants' math.
Furthermore, Defendants' assume a security deposit of $ 300 (Plaintiff's whole security deposit) for all of its purported 61,100 departing tenants, despite the fact that only a portion of a security deposit may have been withheld for some class members. See Doc. No. [1-2], pp. 11 (defining class members as those "who had all or some of their security deposit not returned") (emphasis added). Granted, Defendants did not rely on the $ 500 average security deposit described in Mr. Diego's declaration, and perhaps using Plaintiff's number was an attempt to account for partial withholdings. However, Defendants' assumption also does not account for the differences in "average" security deposits over a twenty-year period. Therefore, for it to be more likely than not that Defendants' estimate is accurate, the Court must assume that $ 300 is a fair *1318 estimate of each plaintiff's damages, despite both inflation over a twenty-year period and the possibility of only partial withholding of deposits.
Even if the Court were to accept the accuracy of these numbers at face value, based on inferential jumps from Mr. Diego's affidavit and Plaintiff's complaint, Defendants' calculations involve other numbers for which the Court has no evidentiary basis from which to make assumptions about their accuracy. For example, after multiplying 4,700 units by a 65% turnover rate for the twenty-year period described in the complaint, and multiplying that number by Plaintiff's security deposit tripled (for statutory damages), Defendants randomly assume that 10% of those departing tenants had their security deposit improperly withheld. Defendants provide no basis for this 10% assumption. A different random assumption produces a drastically different result. If the Court assumes that 5% of the tenants had their deposits improperly withheld, the damages amount to $ 2,749,500.[3] Even adding on another 25% of that in attorneys fees (assuming that number is reasonable, since Defendants never established why 25% was a reasonable estimation of attorneys' fees), the total amount only reaches $ 3,436,875.
Perhaps most importantly, Defendants do not adjust their number of 61,100 departing tenants in any way to accommodate for how many of those tenants were Georgia citizens as of the date of removal. See Doc. No. [1-2], p. 11 (defining the class as "Ryan Whelan and any citizen of Georgia"); see also 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined ... as of the date of filing the complaint ... or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction."). Even if all of Defendants' other numbers are assumed true-those arrived at through inferential leaps from the submitted evidence and those that are just randomly asserted-it is inconceivable that all of Defendants' former tenants over a twenty-year period were Georgia citizens at the time of removal.
Therefore, Defendants' calculations most assuredly overestimate the amount in controversy in this case. Their calculations may be plausible, but that does not mean that they "more likely than not" reflect the amount in controversy in this case. And, that is Defendants' burden-to show by a preponderance of the evidence (i.e., it is more likely than not) that the amount in dispute is sufficient to confer federal jurisdiction. Because Defendants have not met their jurisdictional burden, remand is appropriate.
Although the Court finds that Defendants have not met their jurisdictional burden with respect to the amount in controversy, in light of Plaintiff's request for the fees and costs associated with an "objectively unreasonable" removal (see Doc. No. [8-1], p. 27), the Court analyzes the remainder of Plaintiff's arguments to determine if any basis for awarding fees and costs exists.
B. Timeliness of Removal
Plaintiff also challenges the timeliness of removal. See Doc. No. [8-1], pp. 15-20. He asserts that his complaint "set forth the minimal diversity upon which *1319 [Defendants] now rely to establish federal subject matter jurisdiction." Id. at 16. Therefore, he contends that the thirty-day period for removal began on August 31, 2018 when Defendants received the complaint, and Defendants should have filed their notice of removal by October 1, 2018. Id. at 16-17. According to Plaintiff, Defendants cannot rely on the exception outlined in 28 U.S.C. § 1446(b)(3)"given that the Complaint expressly alleged Whelan was a Maryland resident and provided other indications that Whelan was not a Georgia citizen." Id. at 17-18.
The Court finds that the exception in 28 U.S.C. § 1446(b)(3) applies, and Defendants' notice of removal is timely. Although Plaintiff argues that his statements in the complaint regarding his residency in Maryland indicated the removability of the case, residency is not synonymous with-or sufficient to establish-citizenship. See Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1269 (11th Cir. 2013) ("[T]he allegations in [plaintiff's] complaint about her citizenship are fatally defective. Residence alone is not enough. 'Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction.' And domicile requires both residence in a state and 'an intention to remain there indefinitely ....' ") (citations omitted); see also Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."). Plaintiff's contention that the definition of the class as "Ryan Whelan and any citizen of Georgia" served as further confirmation that Plaintiff was not a Georgia citizen is not an obvious and intuitive reading of that definition. Doc. No. [8-1], p. 16. The statement can just as easily be interpreted as asserting that Plaintiff is a Georgia citizen and that the class includes other Georgia citizens.
The allegations regarding residency in Plaintiff's complaint did not establish Plaintiff's citizenship and would not have been sufficient to satisfy Defendant's jurisdictional burden on removal. Where a party's citizenship cannot be ascertained from the initial pleading, the removal statute allows for removal after the defendant receives "a copy of an amended pleading, motion, order or other paper" that demonstrates the plaintiff's citizenship. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 n.4 (11th Cir. 2010) (describing § 1446's exception as encompassing cases "that initially could have been removed had the parties possessed the relevant jurisdictional information, but, because the removability was not initially ascertainable, the defendant could not carry its jurisdictional burden until a later time").
It is true that the complaint's allegations may have put Defendants on notice that the case was potentially removable, but Defendants acted diligently to ascertain whether that was the case by serving written discovery seeking the information they would need to establish the required jurisdictional facts upon removal. See Doc. No. [1-5]. Within thirty days of receiving confirmation of Plaintiff's citizenship, Defendants filed their notice of removal. See Doc. Nos. [1]; [1-7]. Therefore, the Court finds Defendants' notice of removal to be timely.
C. Home-State Exception
Even if Defendants had successfully met their jurisdictional burden under CAFA, remand would be appropriate under the home-state exception. The exception provides that "[a] district court shall decline to exercise jurisdiction" over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in *1320 which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added). This exception is mandatory if its elements are met. See 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3724, Westlaw (database updated April 2019).
In this case, Plaintiff's class definition limits membership in the class (other than himself) to only Georgia citizens. Doc. No. [1-2], ¶ 29. Therefore, every class member, except for one, is a Georgia citizen. As long as the class ends up containing more than three people, it is certain that two-thirds or more of the class members are Georgia citizens. All three Defendants report being citizens of Georgia. Doc. No. [14].[4] Therefore, because two-thirds or more of the members of Plaintiff's proposed class and the primary Defendants are all citizens of Georgia, the Court must remand.
Defendants argue that Plaintiff "must present evidence from which the Court can credibly adduce that more than two-thirds of the purported class members are Georgia citizens." Doc. No. [10], p. 3 (quoting Anderson v. King Am. Finishing, Inc., No. 1:11-cv-2258-JEC, 2013 WL 1213267, at *2 (N.D. Ga. Mar. 25, 2013). Defendants point to cases where plaintiffs failed to meet this evidentiary burden. See In re Sprint Nextel Corp., 593 F.3d 669, 674 (7th Cir. 2010) ; Anderson, 2013 WL 1213267 at *6 ; Fuller v. Home Depot Servs., LLC, No. 1:07-cv-1268-RLV, 2007 WL 2345257, at *5 (N.D. Ga. Aug. 14, 2007) ; Scott v. ING Clarion Partners, LLC, No. 1:06-cv-1843-RLV, 2006 WL 3191184, at *5 (N.D. Ga. Oct. 31, 2006).
However, all of Defendants' cases are easily distinguishable. None of them involved a class that was defined by its citizenship. In fact, in one of the cases cited by Defendants, the Seventh Circuit acknowledged that plaintiffs could define their class in such a way as to fit within the CAFA home-state exception and even stated that the plaintiffs in that case "could have guaranteed that the suit would remain in state court" if they had defined their class as citizens of the home state. In re Sprint Nextel, 593 F.3d at 673, 676. All the other circuits that have weighed in on the home-state exception have come to the same conclusion. See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 81 (1st Cir. 2009) (class limited to only Florida citizens); Johnson v. Advance Am., 549 F.3d 932, 937 (4th Cir. 2008) (noting that the plaintiffs restricted their class definition to citizens of South Carolina to fit within the home-state exception and that "plaintiffs, as masters of their complaint, can choose to circumscribe their class definition in this way").
*1321 Defendants attempt to circumvent the cases cited by Plaintiff, which support the proposition that plaintiffs can define their class in such a way as to avoid federal jurisdiction under CAFA, in two ways. First, they note that the Eleventh Circuit has not ruled on this issue. Doc. No. [10], pp. 9-10. While binding precedent may not exist within this Circuit, Defendants provide no reason why the Court should not be persuaded by the precedent of the First, Fourth, and Seventh Circuits. Nor do Defendants provide any conflicting rulings from other Circuits. Second, Defendants contend that because the class period spans twenty years, some of the class members may have moved to another state or country. Doc. No. [10], p. 5. Therefore, Defendants seem to argue, the class would contain citizens of states other than Georgia. But, if former tenants have moved out of the state, they are ineligible to be class members. See Dennison v. Carolina Payday Loans, Inc., 549 F.3d 941, 942 (4th Cir. 2008) ("[T]he class is defined to include only citizens of South Carolina, thus excluding persons who may have moved from South Carolina and established citizenship elsewhere at the time the action was commenced."). The class is defined as citizens of Georgia and membership in the class will depend upon citizenship at the time of filing or removal. 28 U.S.C. § 1332(d)(7).
Defendants overarching argument is that, because Plaintiff offers no evidence of the class members' likely citizenships, Plaintiff fails to meet his evidentiary burden. However, as the Seventh Circuit stated, "it doesn't take any evidence to establish that [Georgia] citizens make up at least two-thirds of the members of a class that is open only to [Georgia] citizens." In re Sprint Nextel, 593 F.3d at 676. By restricting his class definition to only Georgia citizens, Plaintiff has successfully shown that two-thirds or more of the proposed class will be Georgia citizens. Therefore, Plaintiff meets his burden to invoke the home-state exception and remand is appropriate.
D. Costs of Removal and Remand
Plaintiff asserts that removal was "objectively unreasonable" and asks the Court to award the costs and fees associated with removal. Doc. No. [8-1], p. 27. Plaintiff makes this request in a single paragraph at the end of his brief, without laying out the standard for such an award or attempting to show that Defendants' actions qualify under that standard. See id.
The removal statute grants courts discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Plaintiffs are not automatically entitled to their fees and costs and, usually to receive such an award, must show that the defendant lacked an "objectively reasonable basis" for removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 136-41, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Unusual circumstances may warrant the award of fees and costs even where the defendant did have an objectively reasonable basis for seeking removal. Id. at 141, 126 S.Ct. 704.
The Court declines to award Plaintiff his fees and costs. First, Defendants had at least an arguably colorable basis for seeking removal. Despite the Court finding that Defendants did not meet their jurisdictional burden, Defendants put forth a jurisdictional argument that was not unreasonable on its face. Defendants' arguments regarding the home-state exception were more problematic. But, in the end, the lack of Eleventh Circuit binding precedent saved their assertions from being legally frivolous. Second, the Court finds no "unusual circumstances" in the present case that would warrant awarding attorneys *1322 fees despite Defendants objectively reasonable basis for attempting removal. Therefore, Plaintiff's request for attorneys' fees is denied.
IV. CONCLUSION
For the foregoing reasons, Plaintiff's Motion to Remand is GRANTED . Doc. No. [8]. Plaintiff's request for attorneys' fees is DENIED . This case is hereby REMANDED to the State Court of DeKalb County. The Clerk is DIRECTED to close the case.
IT IS SO ORDERED this 26th day of April, 2019.

CAFA does not require complete diversity (i.e., all plaintiffs being of diverse citizenship from all defendants); rather, as long as "any member of a class of plaintiffs is a citizen of a State different from any defendant," diversity is achieved. 28 U.S.C. § 1332(2)(A).

Defendants' calculation is represented as follows: 4,700 (units) x .65 (turnover rate) x 20 (statutory period) x $ 300 (security deposit) x 3 (triple damages) x .10 (percent wrongfully withheld) = $ 5,499,000.

The Court's version of Defendants' math with a randomly chosen percent of withholding is as follows: 4,700 (units) x .65 (turnover rate) x 20 (statutory period) x $ 300 (security deposit) x 3 (triple damages) x .05 (percent wrongfully withheld) = $ 2,749,500.

All three Defendants are limited liability corporations (LLCs). Defendants' notice of removal did not properly plead each LLC's citizenship, as Defendants attempted to rely on the allegations in Plaintiff's complaint which only stated that Defendants were Georgia corporations with their principal places of business in Georgia. See Doc. Nos. [1]; [1-2]. While those allegations may suffice to establish jurisdiction in state court, they are insufficient to establish an LLC's citizenship in federal court. See Rolling Greens MHP, LP v. Comcast SCH Holdings LLC, 374 F.3d 1020, 1021 (11th Cir. 2004) (holding that for diversity purposes an LLC is a citizen of every state in which any of its individual members are citizens"). The Court ordered Defendants to properly establish their states of citizenship. Doc. No. [13]. Defendants' response does not supply the identities of the individual members of each LLC, but it does assert that each individual member is a citizen of Georgia. Although Defendants' assertions would not suffice to establish complete diversity, only minimal diversity is required under CAFA. Therefore, because Defendant has alleged that at least one member of one Defendant is diverse from Plaintiff, the Court deems Defendants' response sufficient to establish minimal diversity.